**HEVENOR v. UNITED STATES.**

No. 49874.

United States Court of Claims.

Dec. 4, 1951.

466

October 29, 1941, was directed to visit a number of island. possessions of the United States in order to carry out assigned duties in connection with investigation of certain defense projects. His Bureau of the Budget travel order, dated October 29, 1941, stated that plaintiff was to receive "a per diem of $6.00 in lieu of subsistence while traveling outside the continental limits of the United States."

After leaving San Francisco on November 7, 1941, plaintiff, pursuant to his official duties, visited Honolulu, Johnston, Palmyra, and Midway Islands, and on December 7, 1941, arrived on Wake Island, just one day prior to the bombings by the Japanese. On December 23, 1941, plaintiff was captured by the Japanese invasion forces, and thereafter taken to Japan. He remained a prisoner until September 8, 1945, when he was released from a prisoners-of-war camp in Japan.

After his release in 1945, the Bureau of the Budget, on December 18, 1945, submitted to the Claims Division of the General Accounting Office a voucher for the payment to plaintiff of the allowance authorized in the travel order as per diem in lieu of subsistence, for the period of plaintiff's captivity, from December 23, 1941, to September 8, 1945. This voucher the Claims Division returned to the Bureau of the Budget on July 24, 1946, with a request for a proper determination by the head of the Bureau of the Budget of the amount due to plaintiff, pursuant to the Missing Persons Act, 50 U.S.C.A.Appendix, § 1001 et seq.

The Director of the Bureau of the Budget on June 13, 1947, formally determined that plaintiff "was in the status of a person captured by the enemy" within the contemplation of the Missing Persons Act, and was "entitled to have credited to his account as travel allowance, the sum of $8,130, representing per diem in lieu of subsistence at $6 per day" for the period of his captivity.

By decision of the Comptroller General of the United States on October 14, 1947, plaintiff's claim was disallowed, and plaintiff was so notified on November 7, 1947, on

George A. Finch and George A. Finch, Jr., Washington, D. C., for plaintiff.

Ernest C. Baynard, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This case comes before the court on cross motions for summary judgment by the plaintiff and defendant, respectively.

Plaintiff in his capacity as Principal Budget Examiner, Executive Office of the President, Bureau of the Budget, officially stationed in Washington, D. C., on

the grounds that "temporary per diem allowance while in a travel status is not * * * an allowance within the contemplation of the phrase 'pay and allowances' as used in the Missing Persons Act." Plaintiff petitioned the Comptroller General on May 3, 1950, to reconsider and reverse his decision of October 14, 1947, but the Comptroller General by letter dated June 20, 1950, sustained his previous decision.

Plaintiff thereafter filed this suit in the United States Court of Claims, and now moves for summary judgment. In opposition the defendant also moves for summary judgment dismissing plaintiff's petition.

Plaintiff's contentions in summary are that (1) a per diem allowance in lieu of subsistence is clearly within the terms "same pay and allowances" under Section 2 of the Missing Persons Act, 56 Stat. 143, as amended, 58 Stat. 679, and that (2) nevertheless, if there is any doubt as to the scope of Section 2, another provision of the same act, Section 9, precludes any review of the determination by the Director of the Bureau of the Budget that plaintiff was entitled under the act to the allowance for the period of his captivity.

The sections in question, insofar as pertinent, are as follows:

"Sec. 2. Any person who is in active service and who is officially determined to be absent in a status of missing, missing in action, interned in a neutral country, captured by an enemy, beleaguered or besieged shall, for the period he is officially carried or determined to be in any such status, be entitled to receive or to have credited to his account the same pay and allowances to which he was entitled at the beginning of such period of absence or may become entitled thereafter * * *.

"Sec. 9. * * * Determinations are authorized to be made by the head of the department concerned, or by such subordinate as he may designate, of entitlement of any person, under provisions of this Act, to pay and allowances, including credits and charges in his account, and all such determinations shall be conclusive: * *."

The revised sections, which are quoted above, insofar as applicable to the instant case, do not differ substantially from the original sections.

With respect to Section 9, a contention similar to that made by plaintiff here was made by the Government on its motion for a new trial in Dilks v. United States, 119 Ct. Cl. 826. In that case, Dilks, an army sergeant also captured on Wake Island by the Japanese, sought judgment under the Missing Persons Act for an allowance in lieu of rations and quarters for the period of his captivity, which allowance the departmental officials concerned had refused to pay. In rejecting the Government's contention that Section 9 precluded judicial review, we said: "The only issue is one of law as to what Congress intended when, in section 2, it used the expression 'the same pay and allowances.' We find nothing in the Missing Persons Act which makes a departmental conclusion on such an issue final so as to preclude judicial review."

█ That statement, of course, is equally applicable to the case at bar, and plaintiff's construction of Section 9 must be rejected. [1]

1. See also the statement of Commander Jacobs, testifying on behalf of the Bureau of Naval Personnel, Navy Department, Washington, D. C., during the Hearings of the House Committee on Naval Affairs on H.R.4405, 78th Cong., 2d Sess. (1944), which became the Amendatory Act of July 1, 1944:
"The Chairman. Under your amendment, the findings and conclusions of the department are final and conclusive?
"Commander Jacobs. That is the purpose of it * * *.
"Mr. Cole. I should like to have you explain why this Administrator should have authority to go beyond the provisions contained in the act giving him authority.
"The Chairman. I do not propose to permit the Comptroller General to pass on questions of fact; that is not what he was created for.
"Mr. Cole. I do not dispute that.
"The Chairman. That is the point he raises.
"Commander Jacobs. That is true.
"Mr. Cole. No; the department by making this change wants to make it possible for the Navy Department to make any determination that it may 10'

■ What then did Congress intend by its use in Section 2 of the expression "same pay and allowances"? Plaintiff asserts that the literal and technical meaning of Section 2 embraces all allowances, and "should be taken as the final expression of the meaning intended by the legislature." In fact, however, the administrative agencies chiefly concerned with administering the Act had adopted a construction contrary to that necessary to plaintiff's recovery, which construction had the apparent acquiescence of Congress. The interpretation of an Act of Congress by those charged in large measure with administering the Act, although not conclusive, is nevertheless entitled to persuasive weight. Billings v. Truesdell, 321 U. S. 542, 552–553, 64 S.Ct. 737, 88 L.Ed. 917. Under the circumstances, therefore, we are unable to concede the impropriety of resort to legislative history to determine if there was in fact Congressional understanding and intent that the effect of Section 2 was to exclude from the Missing Persons Act the type of allowance sought by plaintiff. [2]

In Dilks v. United States, on motion for new trial, 119 Ct.Cl. 826, we stated with respect to Section 2, that "Inasmuch as the language of the Act, taken by itself, would include *any* allowance of which a captured person was validly in receipt, proof that Congress intended to exclude any one type of allowance would have to be specific."

Indication of an exclusionary intent can be found in the following excerpt from the hearings cited above, at p. 2343: "It has been administratively determined that pay and allowances to be credited during absence include all continuing pay and allowances to which entitled at beginning of absence but not temporary allowances such as per diem for travel expense. H. R. 4405 retains the present language and change is not deemed necessary."

The only other relevant statement to be found, apparently having the above-quoted in mind, is in the report of the same Committee to the House of Representatives, H.Rept. 1674, 78th Cong.2d Sess., p. 5: "A person is entitled to receive or to have credited to his account the pay and allowances he was entitled to receive at the beginning of such period of absence or which he may become entitled to thereafter. Initially or subsequently included are credits for foreign duty and sea pay, submarine, aviation, and parachute pay, longevity, medal pay, uniform allowances, rental, subsistence and quarters allowances, increases incident to promotion and longevity, and other pay and allowances that may be authorized by law. Temporary or per diem allowances are not included."

It becomes necessary then to determine the exact nature of the allowance within the meaning of Section 2.

to with respect to missing persons, whether authorized by this act or not, and not be subject to check by the accounting people.

"Commander Jacobs. *If I went that far, I was misunderstood.*" [Italics supplied.]

2. In Harrison v. Northern Trust Co., 317 U.S. 476, 479, 63 S.Ct. 361, 362, 87 L. Ed. 407, the court said: " * * * The court [below] then followed Edwards v. Slocum, 264 U.S. 61, 44 S.Ct. 293, 68 L. Ed. 564, where under substantially identical facts and in the absence of a statute such as § 807 [26 U.S.C.A. § 812(d)], the instant issue was resolved against the Government. In so doing the court below refused to examine the legislative history of § 807 on the ground that the section was unambiguous.

"But words are inexact tools at best

and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on "superficial examination." ' United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 544, 60 S.Ct. 1059, 1063, 1064, 84 L.Ed. 1345. See also United States v. Dickerson, 310 U.S. 554, 562, 60 S.Ct. 1034, 1038, 84 L.Ed. 1356. So, accepting the Circuit Court's interpretation of Illinois law as to the incidence of the tax, we think it should have considered the legislative history of § 807 to determine in just what sense Congress used the words 'payable out of'. The committee reports on § 807 demonstrate that it was intended as 'a legislative reversal of the decision' in Edwards v. Slocum, supra."

The two terms "per diem" (as used in "per diem for travel expense") and "subsistence" (as used in "rental, quarters and subsistence allowances") were mutually exclusive in the understanding of the Committee, as indicated by the excerpts from the legislative history. Thus the nominal characterization of the allowance here as "per diem in lieu of subsistence" cannot be definitive as to the exact nature of that allowance.

However, it is not necessary to rely on apparent verbal contradictions. We noted in the Dilks case, 94 F.Supp. 663, 665, 118 Ct.Cl. 438, 448: "From the legislative history set forth above, it is clear that Congress knew that 'temporary allowances *such as per diem for travel expense*' were not considered by the agencies to be the sort of pay and allowances that should be credited to a captured soldier's account. Thus we may conclude that Congress may have intended specifically that per diem for travel expenses was an excluded allowance."

This we consider to be controlling as to the main issue in the present case. We hold that the allowance authorized to plaintiff here was in fact and in law a temporary per diem allowance for travel expense, and therefore not within the scope of Section 2 of the Missing Persons Act, as amended.

This holding is impelled by the following: the objective of plaintiff's trip was to visit a number of Pacific Islands for the purpose of investigation and report in connection with the defense effort. Plaintiff was not, as was Dilks, assigned to one station for "temporary duty." On the contrary, plaintiff was constantly in a travel status from November 7, 1941, when he left San Francisco, to December 23, 1941, when he was captured on Wake. During the period up to his arrival on Wake on December 7, only one day before the Japanese bombings, plaintiff's official duties had carried him to Honolulu, Palmyra, and Johnston Islands, back to Honolulu, then to Midway and finally to Wake. This itinerary contrasts with Dilks', who went directly from his permanent station in Hawaii to Wake, and whose orders required his return directly to Hawaii upon completion of an unspecified term of temporary duty.

In addition Dilks had been on Wake from November 11 to December 23, i. e., more than 31 days, before he was captured, after which period his allowance had reached through a descending rate scale, the same amount per day as was allowed by existing army regulations for enlisted personnel on permanent duty, to whom the army was not furnishing rations and quarters in kind. Thus any implication that Dilks' allowance was a travel allowance was effectively negated.

Plaintiff's allowance was authorized "in lieu of subsistence while traveling outside the continental limits of the United States, including time spent on shipboard or airplane." He was to return to Washington, D. C., "upon completion of travel * * * on or about January 5, 1942." Furthermore in his letter to the Comptroller General dated June 13, 1947, the Director of the Bureau of the Budget formally determined that plaintiff was "entitled to have credited to his account as *travel* allowance" the sum here sought. [Italics supplied.]

And finally any doubt remaining as to the actual nature of the allowance claimed by plaintiff should be effectually dispelled by reference to the statute authorizing civilian agencies to pay "subsistence" allowances to their employees. That statute, the Subsistence Act of 1926, as amended, in effect during the period in question, was predicated upon the circumstances that the employees be "traveling on official business and away from their designated posts of duty". 44 Stat. 688, 47 Stat. 405, 56 Stat. 39. It also defined the term "subsistence" as "lodging, meals, and other necessary expenses incidental to the personal sustenance or comfort of the traveler"; "per diem allowance" as "a daily flat rate of payment in lieu of actual expenses"; and "actual expenses" as "the actual amounts necessarily expended by the traveler for subsistence". Thus by the Subsistence Act of 1926, which was the very act authorizing the payment of plaintiff's

allowance "per diem in lieu of subsistence" that allowance was to be paid to plaintiff while "traveling on official business as a daily flat rate of payment in lieu of the actual amounts necessarily expended by the traveler for lodging, meals, and other necessary expenses incidental to the personal sustenance or comfort of the traveler."[3]

It is abundantly clear then that the allowance which is the subject matter of this claim was in its intendment, in law and in fact, a travel allowance, and plaintiff must be denied relief.

■ Plaintiff contends that even though full relief be denied to him, nevertheless he is entitled to partial relief in the amount of the original allowance computed for the period from his capture on December 23, 1941, to the date of the amendment of the Missing Persons Act on July 1, 1944. The reasoning supporting that contention is not readily apparent. The 1944 amendment did not purport to alter the type of pay or allowance covered under Section 2. It is the phrase "same pay and allowances" which is under construction, the exact same language which appears in the original Act of March 7, 1942. The law in that respect was the same after the amendment as before.[4]

■ There remains only to consider plaintiff's assertion that, contrary to our reading of the law, and in contrast to the Government's refusal to pay plaintiff's claim, the Comptroller General in two prior decisions, B–28935, dated February 17, 1943, and B–48470, dated March 8, 1948, authorized the payment of claims arising under circumstances similar to plaintiff's case. It should be noted that the first of those, at least, did not arise under the Missing Persons Act. In addition, those rulings of the Comptroller General are not before the court for review, and even if they were, we would not be bound by administrative decisions contrary to law.

Therefore plaintiff's motion for summary judgment must be denied and defendant's motion for summary judgment should be granted.

It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.

---

3. On the contrary, the statute which authorized payment of basic "subsistence" allowances to enlisted personnel, for example, did not depend upon the presence or absence of a travel status, but required as its principal condition that the recipient was not furnished rations or quarters in kind. 37 U.S.C.A. § 110.

4. A statement by a legislative committee as to the significance of a statute made within five years after its passage is virtually conclusive on the courts where the committee is the one which reported the bill on which the statute was enacted. Sioux Tribe v. United States, 316 U.S. 317, 62 S.Ct. 1095, 86 L.Ed. 1501. It was, of course, the House Committee on Naval Affairs which considered the original and the amended Missing Persons Act. H.Rept. 1680, 77th Cong., 2d Sess. (1942); H.Rept. 1674, 78th Cong., 2d Sess. (1944).