## LUNA v. UNITED STATES.

No. 50178.

United States Court of Claims.

Dec. 2, 1952.

Prew Savoy, Washington, D. C., for plaintiff.

Thomas O. Fleming, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LIT-TLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff, a native Filipino, sues for $234.85, the cash value of annual leave which, he claims, he accumulated during his employment by the United States Army in the Philippine Islands from February 9, 1945, through July 31, 1945, and from July 1946 until January 1948. This is a test case, the outcome of which will determine the rights of the large number of native Filipinos employed by the Army in the Philippino Islands during the post-war years. Our task is to construe the pertinent statutes.

Section 1 of the Act of March 14, 1936, 49 Stat. 1161, as amended by 56 Stat. 1052, 5 U.S.C.A. § 30b provides:

"With the exception of teachers and librarians of the public schools of the District of Columbia and officers and employees of the Panama Canal and Panama Railroad on the Isthmus of Panama, and except as provided in section 30$l^1$ of this title, all civilian officers and employees of the United States wherever stationed and of the government of the District of Columbia, regardless of their tenure, in addition to any accrued leave, shall be entitled to twenty-six days' annual leave with pay each calendar year, exclusive of Sundays and holidays: * * *."

Section 7 of the same act, 5 U.S.C.A. § 30e provides:

"The leave of absence provided for in sections 29a, 30b–30e, and 30$l$ of this title shall be administered under such regulations as the President may prescribe, so as to obtain, so far as practicable, uniformity in the application of said sections."

Section 1 of the Act of December 21, 1944, 58 Stat. 845, 5 U.S.C.A. § 61b provides:

"Whenever any civilian officer or employee of the Federal Government or the government of the District of Columbia is separated from the service or elects to be paid compensation for leave in accordance with section 61a of this title, or section 1474 of Appendix to Title 50, he shall be paid compensation in a lump sum for all accumulated and current accrued annual or vacation leave to which he is entitled under existing law. Such lump-sum payment shall equal the compensation that such employee would have received had he remained in the service until the expiration of the period of such annual or vacation leave: * * *."

The plaintiff says that the words of Section 30b "all civilian officers and employees of the United States wherever stationed" applied to him, giving him his right to the leave for which he seeks to be paid. And he says that the words of Section 61b "Whenever any civilian officer or employee of the Federal Government * * * is separated from the service * * * he shall be paid compensation in a lump sum for all accumulated and current accrued annual or vacation leave to which he is entitled under existing law", give him the right to the money for which he here sues, since he never got the leave provided for in Section 30b.

■ The text of the statute, read literally, supports the plaintiff's claim. He was a civilian employee and Section 30b refers to *all* civilian employees. If he was given the right to the leave, by Section 30b it would seem to follow that he was given the right to the cash payment in lieu of leave, by Section 61b. The Government, then, has the burden of convincing us that the statutes must not be read literally.

Section 30e, quoted above, provides that the leaves of absence provided for in Section 30b should be administered under such regulations as the President might prescribe, so as to obtain, so far as practicable, uniformity in the application of

---

1. 5 U.S.C. 30 (*l*) pertained to Post Office Department employees. This footnote, of course, does not appear in the statute.

the leave statutes. By Executive Order 9414, dated January 13, 1944, 9 Fed.Reg. 623–627, the President issued regulations filling in details in the application of the leave statutes. In Section 6.1 of the Regulations, he said:

"These regulations shall not apply to: * * * (f) Alien and native labor employed outside the continental limits of the United States: *Provided*, ·that the head or governing body of any governmental agency which employs alien and native labor outside the continental limits of the United States may promulgate regulations governing the granting of leave to such employees."

The Government contends that it is a settled canon of construction that, unless a contrary intent appears, Acts of Congress are· to be treated as intending to apply only within the territorial jurisdiction of the United States. It cites Foley Bros. v. Filardo, 336 U.S. 281, 69 S.Ct. 575, 576, 93 L.Ed. 680 as a recent application of this canon. In that case a workman who was an American citizen was permitted or required to work more than ·eight hours a day by his employer, an American contractor which was performing a contract for our Government in Iraq and Iran. The employee sued to ·recover the premium overtime pay to which our Federal Eight Hour Law entitled him, if it was applicable. The statute, 40 U.S.C.A. § 324, said it was to apply to ·"Every contract made to which the United States * * * is a party". The Court held that the statute was not applicable, since it was not shown that Congress, in enacting the statute, intended it to ap-·ply to places over which the United States ·did not have sovereignty or some measure of legislative control. It thought that ·Congress would not have intended to pre-·scribe the conditions of labor in a foreign ·country which had the power to prescribe its own conditions of labor. The plaintiff, in reply, points to the case of Vermilya-Brown Co. v. Connell, 335 U.S. 377, 69 S.Ct. 140, 93 L.Ed. 76, in which a ·divided Court held that our Fair Labor ·Standards Act was applicable in a military

base in Bermuda leased by the United States from Great Britain.

The Government urges that, in passing both the 1936 and the 1944 leave statutes, Congress was dealing only with a domestic problem, or a problem concerning American citizens employed by the Government and stationed ·abroad. The words "wherever stationed" in Section 30b do have the flavor of a temporary sojourn about them. The question of leave for alien and native labor employed by our Government in foreign countries does not seem to have brought forth any formal answer between 1936 and 1944. It seems safe to assume that such labor did not receive the generous leave treatment prescribed by Section 30b, though it may have been allowed some leave by the various employing agencies of the Government.

On January 13, 1944, prior to the enactment of Section 61b in December of that year, the President issued his regulations under Section 30b. Section 6.1(f) of these regulations, as we have seen, stated that the regulations did not apply to alien and native labor employed outside the continental limits of the United States. Thus the executive interpretation of Section 30b limited it to the territory of the United States or to American citizens employed abroad. On May 1, 1944, this Court decided the case of Butler v. United States, 101 Ct.Cl. 641, holding that an employee who was separated from Government employment could not recover money in lieu of his unused leave. In December 1944, Section 61b was passed, providing for payment in cash for unused leave to which an employee "is entitled under existing law." There is no legislative history indicating that thought was given to the question of the application of the law outside the United States.

"Existing law" as it was in fact being administered at the time of the enactment of Section 61b was that alien and native labor either received no leave with pay, or only such leave as the various employing agencies chose to give them. Since the President's regulation expressly eliminated them from the coverage of Section 30b it is fair to suppose that the Commit-

tees of Congress having to do with Section 61b knew what the "existing law" was, as it was actually being administered. Yet the statute did not purport to change the law. Congress thereby acquiesced in the construction which the executive had placed upon Section 30b.

The President's Executive Order No. 9414 remained in effect until Congress passed the Annual and Sick Leave Act of 1951, 65 Stat. 679, 5 U.S.C.A. § 2061 et seq. That act contains the following provisions:

> "Sec. 202(2) This title, except section 203(g) shall not apply to alien employees who occupy positions outside the several States and the District of Columbia.
>
> \*  \*  \*  \*  \*  \*
>
> "203(g) Alien employees who occupy positions outside the several States and the District of Columbia may, in the discretion of the head of the department or agency concerned, be granted leave of absence with pay not in excess of the amount of annual and sick leave allowable under this title in case of citizen employees."

5 U.S.C.A. §§ 2061(2), 2062(g).

Thus "existing law" as it was being administered in 1944 when Section 61b was enacted, was made clear and express in 1951, after this suit was begun.

In the War Overtime Pay Act of 1943, 57 Stat. 75, employees outside the continental limits of the United States including Alaska, who were paid in accordance with local prevailing native wage rates for the area in which employed, were expressly excepted from the coverage of the statute. The same exception appears in the Federal Employees Pay Act of 1945, 59 Stat. 295, 296, 5 U.S.C.A. § 901 et seq., and a similar one appears in the Classification Act of 1949, 63 Stat. 954, 5 U.S.C.A. § 1071 et seq. Special treatment is given to such employees in the Amendment of Section 42 of the U. S. Employees Compensation Act, enacted in 1945, 59 Stat. 503, 5 U.S.C.A. § 793. The plaintiff argues that the express treatment of the problem in these statutes shows that Congress knew how to make an exception of alien labor when it chose to do so, hence it must be supposed that when it expressed no exception, it intended none.

We think that the following is a fair reconstruction of the pertinent events. When Congress in 1936 enacted Section 30b it was solving a domestic problem, the restoration of the annual leave privileges that had been curtailed by Section 215 of the Economy Act of 1932, 5 U.S.C.A. § 30a. It gave no thought to the question of native labor in foreign countries, though it did make the statute applicable to employees "stationed" abroad. We think that a decision that Section 30b was applicable to persons situated as was the plaintiff would be, in effect, snatching at an inadvertent lapse of attention on the part of Congress. We would be, in effect doing what Mr. Justice Holmes, sitting as a Circuit Judge, said in Johnson v. United States, 1 Cir., 163 F. 30, 32, 18 L.R.A.,N.S., 1194, should not be done by a court in the interpretation of statutes. His words were "We see what you are driving at, but you have not said it, and therefore we shall go on as before." This case illustrates the inherent wisdom of the canon of construction to which we have referred above, that laws are presumed not to be applicable in foreign territory unless an intent that they should be so applicable is shown. The other statutes cited above, expressly excepting alien and native labor from their coverage persuade us that at the time of the enactment of Section 61b in 1944, Congress would not have intended to confer upon alien and native labor outside the United States the benefit of that statute. It must have supposed that the "existing law" of leave of absence was the law as it had been administered, apparently without controversy. The enactment by Congress in 1951, immediately after the question was raised as to what was "existing law" of Sections 202(2) and 203(g), quoted above, is important evidence of what it had intended in the recent past. Tiger v. Western Investment Co., 221 U.S. 286, 309, 31 S.Ct. 578, 55 L.Ed. 738; Great Northern Railway Co. v. United States, 315 U.S. 262, 277, 62 S.Ct. 529, 86 L.Ed. 836.

Mr. Justice Reed in the majority opinion in Vermilya-Brown Co. v. Connell, supra, said 335 U.S. at page 388, 69 S.Ct. at page 146, "Under such circumstances, our duty as a Court is to construe the word 'possession' as our judgment instructs us the lawmakers, within constitutional limits, would have done had they acted at the time of the legislation with the present situation in mind." By that test we have no serious doubt as to the answer.

The defendant's motion for summary judgment is granted, and the plaintiff's petition is dismissed.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.