Dtoepee, Judge,
delivered the opinion of the court:
The question in this case is whether plaintiff is entitled to retired pay because of physical disability alleged to have been incurred in line of duty while serving as a Eeserve officer in the Navy. The statutes involved are Section 5 of the Naval Eeserve Act of 1938, 52 Stat. 1176, which reads, in pertinent part, as follows:
* * * That the Secretary of the Navy may release any member (of the Naval Eeserve) from active duty either in time of war or in time of peace.
and Section 4 of the Naval Aviation Personnel Act of 1940, 54 Stat. 864, which provides in part as follows:
All officers, nurses, warrant officers, and enlisted men of the United States Naval Eeserve or United States Marine Corps Eeserve, who, if called or ordered into active naval or military service by the Federal Government for extended naval or military service in excess of thirty days, suffer disability or death in line of duty from disease or injury while so employed shall be deemed to have been in the active naval service during such period, and they or their beneficiaries shall be in all respects entitled to receive the same pensions, compensation, retirement pay, and hospital benefits as are now or may hereafter be provided by law or regulation for officers, warrant officers, nurses, and enlisted men of corresponding grades and length of service of the Eegular Navy or Marine Corps: * * *
This is an action for disability retirement pay from May 23, 1946, when plaintiff, a Navy commander, was released *237 from active duty, to the present. The claim arises from two accidents involving plaintiff during 1943 while on active duty. Plaintiff alleges and has testified that as a result of these accidents, he suffered back injuries of which he testified that he complained to Navy medical authorities and for which he testified he received medical treatment by the Navy at the same time that he was being examined or treated for other conditions. There is no medical record as to either of these accidents.
Plaintiff testified as to complaints and treatments for low back pains in 1944 at a naval dispensary; there is no record of this. On January 1, 1945, he was examined and found physically qualified for promotion to lieutenant commander. Although the examining physician noted an injury to the right knee resulting from the second 1943 jeep accident, there was no record of any complaint or treatment for back injury. Plaintiff testified that he had been receiving frequent heat treatments for the back injury prior to this examination, of which, however, there is no record.
In March 1945 plaintiff was examined at a naval dispensary. The record of this examination revealed a complaint and report of kidney pain. Plaintiff testified he complained about his back, not his kidneys, but the medical record does not show this. He was given a urological examination and X-ray of the kidneys at a naval hospital, with negative results and report.
On November 7,1945, plaintiff was examined by the Navy and found fit for active duty and for promotion to commander. On February 14, 1946 plaintiff was examined and found physically qualified for transfer to the separation center.
On February 18, 1946, plaintiff was examined at a Navy separation center to determine whether he was qualified for release from active duty. The report refers to the 1943 injury to his knees; however, plaintiff was found to be physically qualified for release from active duty. Plaintiff testified that he complained of back pains during the course of this examination, but was told this would be taken care of by the Veterans Administration. There is no record of this complaint. He was released to inactive duty May 23, 1946.
*238 Plaintiff testified that at several of these examinations, he reported pain in the lower back, and at times was treated for this condition. However, the medical reports of these physical examinations during the period from the time of the two accidents in 1943. up to and including the date of release to inactive duty on May 23, 1946, referred only to kidney pains and the knee injuries. None of these reports mentioned any complaint, diagnosis, or treatment for back injury or pain. Plaintiff knew, on the two occasions when he was given physical examinations for promotion, that it was necessary that he be found fit for active duty in order to be advanced in rank. He knew that the result of each examination was that he was found physically qualified for active duty and promotion. There is no showing that any protest was made by plaintiff as to these physical examinations by the Navy, including the examination at the separation center on February 18,1946.
At that time, he applied to the Veterans Administration for a disability compensation or pension for conditions claimed as knee injuries and lower back pains. In reporting the time and place of prior treatment for any condition in service, he listed treatments for knee injuries during 1943 and 1944 but only listed past back pain and examinations in March 1945 at the Navy dispensary hospital. Plaintiff was rated 20 percent disabled by the Veterans Administration for the knee condition, with no reference to any back condition. Thereafter on November 30, 1954, plaintiff’s disability rating was reduced to zero percent.
On March 1, 1957, plaintiff furnished the Veterans Administration with a medical report by an orthopedic surgeon that plaintiff had “an unstable lumbo-sacral joint as a result of old disc injury that has progressively worsened since 1943.” On May 7, 1957, plaintiff underwent a surgical operation at a Veterans Administration hospital for a laminec-tomy and removal of an intervertebral disc. X-rays showed mild osteoarthritic changes in the lumbo-sacral area. He was discharged from the hospital on May 23, 1957 with no complications.
Plaintiff’s zero rating for disability was confirmed by the Veterans Administration on October 3, 1957. On Decern- *239 ber 10,1957, the Board of Veterans Appeals, after a bearing, denied plaintiff’s appeal and found “insufficient evidence to establish that herniated nucleus pulposus was causally related to the symptoms referable to the back reported in service, or was otherwise incurred in or aggravated by service.” This is the extent of the record relating to plaintiff’s case with the Veterans Administration.
On March 28, 1951, plaintiff was given the regular quadrennial physical examination required of officers in the Naval Reserve on inactive duty. He was found to be physically qualified for active duty in event of war or national emergency. The report listed a history of the knee conditions and also sciatic pain for 2 years, secondary to herniated intervertebral disc. This is the first report of a herniated intervertebral disc in the record of this case.
On November 23,1954, plaintiff was given another regular quadrennial physical examination and the following defects, considered disqualifying, were noted: menisci damage bilaterally ; probably chronic degenerative disc disease. Plaintiff was found to be suitable only for limited duty if recalled to active service. On September 1, 1955, plaintiff was honorably discharged from the TJ.S. Naval Reserve by reason of nonparticipation in the Naval Reserve program.
On September 30, 1958, plaintiff requested that the Secretary of the Navy direct that he be ordered before a retiring board for a determination of his right to retired pay. This was the first time since plaintiff’s release to inactive duty in May 1946 that plaintiff had formally requested retirement action by the Navy. His request was denied.
Under date of December 1, 1958, plaintiff filed an application with the Board for Correction of Naval Records to show “retirement as of date of release from active duty because of physical disability incurred in active service.” Plaintiff advised the Board that he did not desire to appear before the Board or have witnesses present. Following a detailed report of the facts by an examiner, the Correction Board on March 24,1959, denied plaintiff’s application without prejudice to further review on additional evidence of error or injustice.
*240 On April IB, 1959, plaintiff filed bis petition in this court alleging that the failure of the Correction Board to take action on his case constitutes arbitrary and capricious treatment and that it is contrary to law.
This court has repeatedly made it clear that it will not review the decision of an authorized board of the Armed Services in a disability retirement case to determine when or whether a service man is fit or unfit for military service. The burden of proof is on plaintiff in all such cases to establish that the denial of retirement rights was arbitrary, capricious, or contrary to law. Plaintiff has not met this burden of proof. He has testified that occasionally, during the several physical examinations, he complained of and was treated for back pains following the two accidents in 1943, and before his release to inactive duty in 1946. Nevertheless the Navy medical records of each of these several examinations, while referring to knee injuries and kidney condition, contain no mention of complaints, diagnosis, or treatment of back pains or back injuries. These records include the two physical examinations of plaintiff for his two promotion's when he must have known that he had been found physically fit for active duty. There is no record or evidence of any complaint or protest by plaintiff as to any of these examinations or to the record thereof while he was in service. He was finally rated in 1957 at zero percentage of disability by the Veterans Administration, and this rating was affirmed on appeal to the Board of Veterans Appeals. He notified the Correction Board that he did not wish to appear or offer any witnesses at the hearing. The denial of plaintiff’s request to the Secretary of the Navy for determination by a retiring board, and the denial of his application by the Board for Correction of Naval Becords, and the Secretary, were not arbitrary, capricious, or contrary to law.
Moreover, for the reasons stated in this court’s opinion in Lipp v. United States, also decided this day, ante, p. 197, this claim is barred by the statute of -limitations. Plaintiff’s claim for retirement pay is denied, and his petition will be dismissed.
It is so ordered.
*241 Reed, Justice- (Bet.) sitting by designation; Laramore, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered.the evidence, the report of Trial Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, who was bom in 1908, was commissioned in the U.S. Naval Reserve in February 1942 as a lieutenant, junior grade. He entered upon active duty on March 13, 1942 and served until May 23, 1946 when he. was released to inactive duty. It appears that the period of from about February 18,1946 until May 23,1946 was terminal leave.
2. Plaintiff was examined on September 23, 1941 in connection with his application for a commission and was found physically fit, no disqualifying defects noted. On March 9, 1942 plaintiff was again examined incident to his orders to active duty and was found physically fit; no defects were noted. On October 5, 1942, plaintiff was. examined and found fit for promotion to lieutenant.
3. Between November 30,1942 and December 2,1942 plaintiff was treated for acute enteritis. He was found physically qualified an his annual physical examination dated October 6, 1943, and again on October 31, 1944; no disqualifying defects were noted on either examination.
4. Upon reporting for duty at the Fuel and Net Depot, Melville, Rhode Island in February 1944, plaintiff reported to the dispensary and complained of low back pains. Plaintiff reported to the dispensary from time to time for heat treatment for back pains.
5. On December 18,1944 the plaintiff, who was then commanding officer of the Fuel and Net Depot at Melville, Rhode Island, complained to the medical officers at that facility concerning pain and swelling in his right knee. He was sent to the Newport Naval Hospital at Newport, Rhode Island, for consultation. That hospital reported back to the Melville facility as follows:
* * * “He has an exacerbation of a chronic traumatic synovitis with stretching of collateral ligaments. Suggest admission for further study and treatment.”
*242 The plaintiff was, on December 18, 1944, admitted to the Newport Naval Hospital with a diagnosis of synovitis, traumatic chronic (rt. knee) #2557. On December 20,1944, X-ray examination was made on both knees of the plaintiff. Since his complaint then was limited to his right knee only and X-ray revealed nothing abnormal, upon a showing of some improvement of the plaintiff’s right knee, he was discharged from the hospital on December 26, 1944.
6. On January 1, 1945 the plaintiff was given a physical examination at the dispensary of the Fuel and Net Depot at Melville, Ehode Island, and found to be physically qualified for promotion to the grade of lieutenant commander. In connection with that examination, un der History of illness or injury, it was noted by the examining physician: “Synovitis, traumatic, chronic, right knee. Discharged to duty from U.S. Naval Hospital, Newport, R.I. 26 December 1944”. Under the heading, Spine and extremities (bones, joints, muscles, feet), it was noted, “Normal Pilonidal scar well healed”. For a period of several months prior to this examination, the plaintiff had been given diathermy treatment for his complaint of low back pain.
7. Sometime between January 1 and April 24, 1945, the plaintiff went to the dispensary at the Fuel and Net Depot at Melville where he complained of “pain both kidneys past 2y2 weeks”. The examining physician reported a tenderness in the region of the kidneys which was more marked on the left side. Apparently the plaintiff was sent to the Naval Hospital at Newport and given a urological examination, including cystoscopy, as well as an X-ray of the kidneys. The examining physician reported his impression of the results of this examination as negative and the plaintiff was apparently (the record is unclear on this point) returned to duty. Plaintiff has testified that he never complained of kidney pains but he did complain of lower back pains.
8. On November 7,1945, the plaintiff was given a physical examination at Melville by a Naval medical officer to determine his fitness for promotion to the rank of commander. He was found, as a result of this examination, to be fit to perform active duty at sea or on foreign service and he was promoted. Under Summary of defects, it was noted, as follows: *243 “Clubbing of fingers and toes followed influenza at age of 10. 1) Teeth as charted. 2) Clubbing of fingers and toes. 3) Slight limitation of flexion both knees. 4) Slight varicosities of lesser saphenous systems”.
9. The following note, signed by J. A. Bliss, Lt. Comdr. (MC) USNR, dated December 29, 1945, is a part of plaintiff’s Naval medical records:
History of trauma to both knees in accident in October 1944. Subsequent disability of both knees which required hospitalization in December 1944. Hospitalized 12-18-44 to 12-26-44 (USNH Newport). Intermittently since then has had pain in both knees after walking any distance and frequently knees (catch) when being flexed. No locking of knees. Recent exacerbation of these symptoms.
Exam — slight puffiness and tenderness over lateral cartilage of left knee. No limitation of motion. X-rays taken at USNH Newport about one week ago reported as showing no pathology. This note made for record purposes.
10. On February 14,1946, the plaintiff was given a physical examination by the same Naval physician who authored the note quoted in finding 8. As a result of this examination the plaintiff was found physically qualified for transfer to the separation center. No defects were noted. Chest X-ray was made and found negative. The entry in plaintiff’s Medical History as a result of this examination is as follows:
USN Net Depot, Newport, (Melville), R. I., Date: 2-14-46: Examined this date and found physically qualified for transfer to separation center. Defects noted: None. X-ray of chest made this date. Reported: Negative.
J. A. BLISS
Lt. Comd’r (Me) USNR
11. On February 18, 1946, the plaintiff was transferred to the officer separation center at Boston, Massachusetts, and there given a further physical examination for the purpose of determining whether he was qualified physically for release from active duty. This examination was made by a captain in the Naval Medical Corps, except as to the plaintiff’s teeth, as to which he was examined by a Dental Corps *244 officer. Under History of illness or injury there was noted the following: “No significant change. Denies all serious illness or injury while on active duty USNE. (except) Synovitis, traumatic chronic, right knee was injured in 1943. Injured left knee in 1943. Has had some catching on occasions. States he has discomfort and swelling of both knees on occasions.” Under Spine and extremities (bones, joints, muscles, feet) there was noted the following: “Motion of both knee joints normal. Some pain on extreme flexion of both knees, NOD Clubbing of fingers and toes.” Under Summary of defects there was noted the following: “ (1) Deviated nasal septum to right, (2) Clubbing of fingers and toes, (3) Slight varicosities of both legs.” The plaintiff was found to be fit to perform active duty at sea or on foreign service and was also found to be physically qualified for release from active duty. He was apparently placed on terminal leave on or about February 18,1946, and when such leave expired on May 23, 1946 he was released to inactive duty. Plaintiff testified that during the course of this examination he complained of low back pains.
12. Under date of February 18,1946 plaintiff filed an application with the Veterans Administration for a disability pension or compensation as a result of the following claimed conditions:
July 1943 — Left Knee Injury
Dec. 1943 — Eight Knee Injury
Mar. 1945 — Lower Back Pain
Paragraph 33 of the application form required an answer to the following:
If you received any treatment while in the service, give name, number or location of hospital, first-aid station, dressing station or infirmary, or the organization to which it was attached, the dates of treatment, and nature of sickness, disease, or injury.
The plaintiff answered as follows:
July 1944 — USN Disp. N.A.S. Trinidad, B.W.I., Left knee injury — heat & rest.
Dec. 1943 — USN Disp. N.A.S. Trinidad, B.W.I., Eight knee injury — medication.
*245 Dec. 1944 — USNH Newport, E.I. — Eight & left knee injuries — X-rays & examinations.
Mar. 1945 — USNH Naval Net Depot, Newport, E.I. — Lower back pain — examination.
By letter dated March 8,1946 the plaintiff was advised by the Veterans Administration that he had been rated 20 percent disabled from May 24, 1946, the date following his release from active duty. The assigned rating was 20 percent for plaintiff’s “Eight Knee Condition” and zero percent for “Leg Condition”. This rating was confirmed and continued by rating action of October 7,1948 based on a physical examination of the plaintiff made by Veterans Administration on August 11,1948. By letter dated October 22,1948, Veterans Administration advised plaintiff that no change was warranted in his prior rating.'
13. On March 28, 1951 the plaintiff was given a physical examination at the Naval Gun Factory in Washington, D.C. This was the regular quadrennial examination required of officers in the Naval Eeserve on inactive duty. As a result of this examination the plaintiff was found to be qualified for active duty in event of war or national emergency. Under summary of defects there was noted: Sciatic radicu-litis, right, secondary to herniated intervertebral disc, and torn meniscus, right knee. Under the item Notes (continued) and Significant or Interval History the following words appear on the report of physical examination:
History of sciatic radiculitis, right present for 2 years. Chronic discomfort with severe exacerbations. Made worse by coughing. History of transient locking of right knee and some pain and swelling both knees intermittently for 7 years.
So far as the record shows, this examination of March 28, 1951, is the first time that a physical examination conducted by the Navy contains a report that plaintiff had a herniated disc.
14. On November 23, 1954 the plaintiff reported to the Naval Medical Center, Bethesda, Maryland, for the quadrennial physical examination as a member of the Naval Eeserve. The significant results of such examination are quoted in the *246 report of it by the Navy physicians who conducted it in the following words:
23 Nov 1954
NNMC, Bethesda, Maryland
Quadrennial physical examination conducted this date in accordance with Art. H-1602, BUPERS Manual and Art. 2118.7 Manual of the Medical Department. IS NOT qualified for active duty.
X-RAY: Negative chest film #41067 dtd 23 Nov 1954.
X-RAY: Fihn #12498 dtd 23 Nov 1954. Examination of both knees in AP and lateral views fails to reveal any evidence of bone or joint abnormality. Examination of the lumbo-sacral spine in AP, lateral and oblique view with spot film over the LS joint reveals no bone or joint abnormalities. As an incidental finding there are multiple phleboliths in the pelvis, /s/ E. R. King, GDR MO USN
ORTHOPEDIC CONSULTATION dtd 23 Nov 1954: History of sciatica for 10 years intermittently. Was once hospitalized but discharged as improved. Injured both knees while on active duty. Has had crepi-tation and grating with occasional locking since then. Patient states that there’s not been any change in symptoms during 10 years.
X-rays of lumbar spine and pelvis do not show lumbo-sacral or sacroiliac pathology. Knee films negative for joint or bone abnormalities.
Impression: 1. Probable chronic degenerative disc disease. 2. Old menisci damage bilaterally.
Recommend no therapy at present. Would be suitable only for limited duty if recalled to active service, /s/ J. W. Draheim, LTJG MO USNR
DEFECTS NOTES: 1. Menisci damage bilaterally. (CD) 2. Probable chronic degenerative disc disease. (CD) 3. Peridontal disease and calculus. (NCD) 4. Defective visual acuity: OS 20/25 corrected to 20/20 by pinhole. (NCD)
(signed) M. L. Gerber
M. L. Gerber

0DRM0U8N

The letters (CD) mean considered disqualifying, and the letters (NCD) mean not considered disqualifying.
15. Plaintiff’s Veterans Administration disability rating was reduced from 20 percent to zero percent effective November 30, 1954. This was based on a Veterans Adminis *247 tration physical examination conducted on July 15, 1954, and rating action of September 9, 1954. By letter dated September 7,1954, the plaintiff was advised that, due to an improvement in his condition, the degree of disability should be reduced from 20 percent to zero percent.
16. On January 6,1955, the Commandant, Potomac River Naval Command, recommended that plaintiff be placed on the U.S. Naval Reserve Officer Inactive Status List and separated from the Naval Reserve. Plaintiff was honorably discharged from the U.S. Naval Reserve effective September 1, 1955 by reason of nonparticipation in the Naval Reserve Program. This recommendation was contained in an endorsement transmitting to the Bureau of Naval Personnel via the Bureau of Medicine and Surgery the report of plaintiff’s physical examination of November 23,1954, wherein he was found to be not qualified for active duty.
17. By letter dated February 1, 1955 the plaintiff advised the Veterans Administration that his “symptoms have not changed for many years and since they are handicapping but not generally incapacitating, I do not wish to submit to surgery nor can I take the time for hospitalization”.
18. Under date of March 1, 1957, plaintiff requested the Veterans Administration to review his claim and furnished Veterans Administration with a medical report prepared by an orthopedic surgeon who had examined plaintiff on February 4, 1957. This medical report stated in part as follows:
Examination: Spasm in the low back. All motions are markedly limited. Straight leg raising is positive on the right side. Sensation is decreased over the right great toe. There is tenderness at L4-L5-S1. The sciatic nerve is tender in the right thigh.
X-rays demonstrate thinning of the discs at L4-L5-Sl.
This patient has an unstable lumbo-sacral joint as a result of old disc injury that has progressively worsened since 1943.
19. The plaintiff was admitted to a Veterans Administration hospital on May 7,1957 and underwent a surgical operation for a laminectomy and removal of an inter-vertebral *248 disc. X-rays showed mild osteoarthritic changes in the lumbo-sacral area. He had an uncomplicated post-operative course except for some abdominal distention which disappeared without treatment; and plaintiff was discharged from the hospital on May 23,1957 with no complications.
20. As a result of plaintiff’s attempts with Veterans Administration to establish service connection for his back condition, Veterans Administration, on August 20, 1957, requested the Department of the Navy to furnish all clinical records of treatments claimed by plaintiff to have been furnished him for the following alleged diseases or injury and at the following stations of treatments:
Sciatic pains; knee injuries 1942, 1943
XTSNAS Trinidad BWI, 5/31/42 to 12/1/42
USNSD Trinidad BWI 12/1/42 to 12/6/43
In reply thereto, the Department of the Navy, Bureau of Medicine and Surgery, under date of September 19, 1957, advised Veterans Administration that “A thorough search of the files of the Naval Supply Depot and Naval Air Station, Trinidad, B.W.I. fails to reveal any record of the alleged condition”,
21. On October 3,1957 a Veterans Administration Bating Board considered plaintiff’s contentions and took the following action:
Informal appeal received 11/29/54. _
_ Disability evaluation of knee condition, and service connection for back condition.
The rating of 9/9/54 reduced the veteran’s compensation from 20% to 0% for synovitis, traumatic, knee, bilateral. The veteran protested this reduction and on 2/1/55 submitted a report of the Naval Medical examination recommending placing the veteran on the inactive reserve officers status, because of probable chronic degenerated disc evident by sciatica and old menisci damage, bilateral. The examination of 7/15/54 showed no. active synovitis apparent at that time. The veteran claimed relationship between knee injury incurred in service and sciatica. He also claimed treatment in service for the back condition associated with his sciatica. Service records available at that time did not confirm the veterans statements, showing only one complaint of back pain which is described as pain over, both *249 kidneys, with pyuria and diminished dye_ excretion. Shortly after, however, on 4/24/45 a urological examination was negative. On 9/28/57 the veteran forwarded a letter of Dr. Terrell who was on duty at the Naval Dispensary at Melville, Rhode Island during the period 1944 to 1946. This letter states that the veteran had reported to the dispensary some time during this period for treatment of knees and complaining of back pain, the cause of which was not determined. The veteran claims the year to have been 1945. Physical examination made 11/7/45 and 2/18/46 make no mention of any complaint or findings of any back pain or signs of this disease.
In view of 1) the indefinite description of back pain in service, 2) the possibility of renal origin, 3) the negative examinations subsequent to claimed incur-rence, and 4) no demonstrated relation between knee condition and back pain, no change in the rating of 9/9/54 is warranted and it is hereby confirmed and continued with the following amendment.
Not service incurred or aggravated WWII BACK CONDITION
Rep. VFW
22. The plaintiff appealed the action of the Veterans Administration Rating Board, and as a result thereof, the plaintiff was accorded a formal hearing before the Rating Board on November 13, 1957. The Rating Board, in its decision dated November 25, 1957, confirmed and continued its prior action of October 3, 1957.
23. On December 10,1957, the Board of Veterans Appeals held a hearing in the plaintiff’s case. He testified before that group and submitted certain letters to the Board. The plaintiff’s appeal was denied with the following:
*****
DISCUSSION AND DECISION: The evidence has been considered in association with the contentions advanced in the appeal. Service records show that he complained on one occasion of pain in both kidneys. Clinical and other findings reported do not show that symptomatology was other than acute and transitory in nature, which improved upon treatment. The records do not otherwise show pertinent trauma to the back during service and there were no complaints or findings of an associated disease or disability reported on exami *250 nation for release from active duty. A continuation of symptomatology of a back condition from time of release from service until official examination in March 1951 is not shown and a review of the evidence in its entirety is insufficient to establish that herniated nucleus pulposus is causally related to the symptoms referable to the back reported in service, or was otherwise incurred in or aggravated by service. Therefore, it is the decision of the Board that the evidence does not warrant the grant of service connection, either direct or by way of aggravation for herniated nucleus pulposus.
The appeal is denied.
24. The plaintiff, by letter dated September 30, 1958, requested that the Secretary of the Navy direct that he be ordered before a retiring board for a determination of his right to retired pay. This was the first time that plaintiff had formally requested retirement action from the Department of the Navy. The Chief of Naval Personnel, by letter dated November 26, 1958, denied plaintiff’s request.
25. Under date of December 1, 1958, plaintiff filed an application with the Board for Correction of Naval Records wherein he requested a correction of his Naval records to show “retirement as of date of release from active duty because of physical disability incurred in active service”. The plaintiff, in his application, advised the Board that he did not desire to appear before the Board and that he did not desire to have witnesses appear ha person in support of his application. As a result thereof, plaintiff’s application was referred to an examiner who, upon the basis of plaintiff’s Naval and Veterans Administration records, including statements attached to plaintiff’s application, submitted a detailed report of the facts with the following conclusion and recommendation:
*****
CONCLUSION: In view of the medical history it appears that this Petitioner suffered disability but not to such extent as to be within the standards and law applied to retirement at the time of his release from active duty. It does not appear to this examiner that Petitioner has met the burden of proof incumbent on him to establish substantial error or injustice requiring corrective action.
RECOMMENDATION: Deny application.
*251 26. By letter dated March 24, 1959, plaintiff was advised by the Board for Correction of Naval Becords as follows:
Eeference is made to your application for correction of your naval record, under,the provisions of Title 10 T7.S.C. 1552.
Administrative regulations and procedures established by the Secretary of the Navy for the guidance of this Board provide that the burden of proof is on a Petitioner to show by documentary evidence that an error has been made, or an injustice has been suffered. Further, a hearing by the Board may be denied when a Petitioner has failed to show that an entry or omission in his naval record was improper or unjust under then existing standards of naval law, administration, and practice.
Preliminary examination of your naval record and review of the material submitted by you fails to establish a sufficient basis for further action by this Board.
It is not the intention of the Board to imply that a subsequent review of your case may not be had. As stated above, however, the burden is on you to show that an error or injustice has occurred.
In the absence of additional material evidence, no further action on your application is contemplated.
27. While on duty in Trinidad, British West Indies, the plaintiff was involved in an accident in which he was struck on the left knee by a motor-driven lift truck in a warehouse. There is no record of any treatment at any military or naval medical facility at Trinidad on account of this occurrence. The plaintiff has testified that a doctor who lived at the same quarters as the plaintiff treated his knee and that he was confined to his quarters for about a week.
Sometime in November 1943, which was several months later than the earlier occurrence, the plaintiff, while on duty, was involved in an accident while driving a jeep. His right knee was injured as a result of this accident which according to his testimony, which is accepted as true, rendered him unconscious. He was again treated at his quarters for about two weeks and no medical record of this occurrence was made. He was soon afterward returned to duty, after a three-week period of leave, in Washington, D.C., for a short time. In February 1944, he was ordered to duty at the Naval Fuel and Net Depot at Melville, Bhode Island.
*252 28. Tbe plaintiff knew, after October 1943, on the two occasions when he was given physical examinations for promotion, that it was necessary that he be found fit for active duty in order to be advanced in rank. He knew that the result of each examination was that he was in fact found qualified for active duty and for promotion.
29. There is no showing that any protest was made by the plaintiff concerning the results of any physical examination given him by the Navy, including the physical examination at the officer separation center.
30. The plaintiff has not shown causal relationship between the two knee injuries and the operation performed in 1957, eleven years after his release to inactive duty.
31. The action taken by the Board for the Correction of Naval Records was reasonable and supported by evidence.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and therefore his petition is dismissed.