James A. **BECKHAM**

v.

The **UNITED STATES.**

No. 379–61.

United States Court of Claims.
April 14, 1967.

Paul R. Harmel, Washington, D. C., attorney of record, for plaintiff.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before LARAMORE, Acting Chief Judge, and DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

DURFEE, Judge.

Plaintiff enlisted in the Navy on August 15, 1937. After service that merit-

ed appointment as an officer, he was released on November 5, 1945. On September 21, 1950, he requested that he be recalled to active duty. Finding a defect which was classified as "gastritis, chronic, and sequelae of", the Navy informed plaintiff that he would be recalled with a waiver issued pursuant to the Act of December 18, 1942, 56 Stat. 1066.[1] Plaintiff did not extend his tour of duty. On March 4, 1952, he was examined and found qualified for release with no defects being noted. Eleven days later he was released. As in his pre-release examinations, at post-service Navy checkups, plaintiff was found physically qualified to perform active duty.

Dissatisfied with this determination, he initiated action to have his military record corrected to show that upon his release from active duty, he was unfit to perform active service by reason of ulcers. He appeared before a medical review board; the board had him examined and prepared a report of his medical history for the Physical Evaluation Board. This Board then decided that, as of March, 1952, plaintiff was fit to perform the duties of his rank. This decision was affirmed by both the Physical Review Council and the Board for the Correction of Naval Records.

On September 21, 1961, plaintiff filed suit in this court for disability retirement pay under § 402 of the Career Compensation Act of 1949. 63 Stat. 802, 37 U.S.C. § 272(a) (1952). At a pre-trial conference on May 13, 1965, the Trial Commissioner sustained defendant's objection to plaintiff's request for a trial.[2]

This case presents two questions for our determination—(1) What rights to disability retirement pay did plaintiff waive when he returned to active service pursuant to the Act of December 18, 1942? (2) Did the Trial Commissioner err in denying plaintiff's request for a trial?

---

1. This was repealed by the Act of July 9, 1952, 66 Stat. 505.

2. All necessary findings of fact are stated in the opinion. See, e. g., Williamsburg

Drapery Co. v. United States, 369 F.2d 729, 177 Ct.Cl. —— (1966); Farnsworth and Chambers Co. Inc. v. United States, 346 F.2d 577, 171 Ct.Cl. 30 (1965).

## I

The Navy waiver statute provided:

" * * * persons who are otherwise qualified but who have other than organic physical defects which will not interfere with the performance of general or special duties to which they may be assigned, may be issued appointments in the Naval and Marine Corps Reserve and ordered to active duty, and officers now in the Naval and Marine Corps Reserve may likewise be ordered to active duty under similar circumstances:

*Provided*, That any officer of the Naval Reserve or the Marine Corps Reserve hereafter appointed or ordered to active duty upon waiver of physical disability shall not be eligible for retirement benefits by reason of the disability for which waiver was required at the time of appointment or orders to active duty or by reason of any aggravation of such disability: *Provided further*, That such officer, however, shall be eligible for retirement benefits as provided by law for a disability incident to the service: *and provided further*, That except for retirement based upon disability for which waiver is required under this Act, or aggravation of such disability, this Act shall not be construed to deprive any person of any right or benefit authorized under any other Act." * * * 56 Stat. 1066, supra.

The purpose of the statute was to allow certain people possessing physical defects to render needed services during the war without placing a heavy burden upon the taxpayer for the retirement benefits of these people. The statute allowed the Navy to disregard the time-honored epigram that you cannot have your cake and eat it too. For the Navy was able to get the men it needed and also to avoid paying a dear price for their services. However, one slice of the cake did not meet with such favorable results. That was the part which said that the Navy, in implementing the act, could not alter an officer's rights to benefits for an injury or disease initially incurred while on active duty. H.R.Rep. No. 2522, 77th Cong., 2d Sess. (1942); S.Rep. No. 1780, 77th Cong., 2d Sess. (1942).

The time relationship between the waiver and the injury as well as the cause of the injury determines the applicability of the statute to a particular case. If the injury is service connected and occurs after the waiver, disability benefits will still be forthcoming due to the non-alteration proviso in the statute. When the injury takes place before waiver, its compensability depends upon its service connection. The civilian incurred injury is waived without coming into conflict with any limitation placed on the statute. The service incurred injury is not waived. Two factors evidence the intent not to include this situation within the ambit of the statute. The first is the law's intent not to change an officer's existing rights vis-a-vis his service incurred injury. The second is the law's intent to save the taxpayer's money. Unlike in the case of the civilian incurred injury, this latter purpose cannot be served without ignoring the limitation placed upon it.

Since the law has chosen not to sever the initial injury from its aggravation, but to treat them both in the same fashion, the determination of the waiver's effectiveness does not depend upon a classification into either one of these categories.

The waiver statute applies only to people whose disabilities are other than organic defects. Plaintiff contends that his disability, ulcers, is an organic defect and that he is not covered by this statute. The statute itself does not define what an organic defect is. The committee reports offer no insight as to the meaning of this term. The Navy in its Manual of the Medical Department did set forth regulations defining an organic defect as follows:

(a) any defect which might constitute a menace to the health of the individual's associates, or (b) any defect which might jeopardize the general welfare or safety of the individual's associates, or (c) any defect

of such nature that the performance of active naval service might jeopardize the health or welfare of the individual himself, or (d) any defect of such nature that the individual could not reasonably fulfill the purpose of his employment.

\* \* \* \* \* \* \*

This is not the only definition possible, but it is a reasonable one. And since it is reasonable, our court must respect it.[3] This we do to the extent of adopting the regulation's definition.

## II

The Trial Commissioner, in finding that the Board for the Correction of Naval Records was neither arbitrary nor capricious in denying plaintiff's disability retirement pay, limited his inspection to the record before the Board. This was not the proper procedure.

■ In reviewing Board decisions, this court has not substituted its judgment for that of the Board. Only where the decision of the Board is arbitrary, capricious, or unsupported by substantial evidence has this court interfered with the findings of the Board.[4] In determining the arbitrariness, capriciousness, or insubstantiality of an administrative decision, it is not necessary that the re-

view always be restricted to the record before the administrative body. See, Davis, Administrative Law Text, § 29.-07. In a large number of cases involving military pay claims,[5] this court has permitted the taking of *de novo* evidence by the Trial Commissioner.[6] This has not prevented the court from applying its substantial evidence test to the findings of the Board. All that this procedure has done is to expand our substantiality test. We do not ask if the Board decision is supported by substantial evidence upon an inspection of the record, but instead, we ask if the decision meets the test when compared with all available evidence—that is both the record and the *de novo* evidence.

## III

■ In conclusion, we hold that (1) the waiver statute only applies to civilian incurred injuries, (2) the Navy's definition of organic defect is reasonable and acceptable to this court, and (3) the Trial Commissioner should have allowed a trial. Thus, we remand this case to the Trial Commissioner for the holding of a trial to determine (1) all facts which may conceivably be useful in the court's disposition of this case [7], and

3. See, e. g., Zemel v. Rusk, 381 U.S. 1, 8–11, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Udall v. Tallman, 380 U.S. 1, 4–18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Allison v. United States, 157 Ct.Cl. 7, 12, 301 F.2d 670, cert. denied 371 U.S. 901, 83 S.Ct. 206, 9 L.Ed.2d 164 (1962); Hevenor v. United States, 101 F.Supp. 465, 121 Ct.Cl. 77 (1951); Luna v. United States, 124 Ct.Cl. 52, 108 F.Supp. 510 (1952).

4. See, e. g., Kingsley v. United States, 172 Ct.Cl. 549 (1965); Boland v. United States, 169 Ct.Cl. 145 (1965); Patten v. United States, 161 Ct.Cl. 131 (1963); Nichols v. United States, 158 Ct.Cl. 412 (1962); Hoen v. United States, 157 Ct.Cl. 235 (1962); Furlong v. United States, 153 Ct.Cl. 557 (1961); Towell v. United States, 150 Ct.Cl. 422 (1960).

5. See, e. g., *Furlong*, supra; *Boland*, supra; *Towell*, supra; *Kingsley*, supra; Smith v. United States, 168 Ct.Cl. 545 (1964); Hutter v. United States, 345 F.

2d 828, 170 Ct.Cl. 517 (1965); Lawler v. United States, 169 Ct.Cl. 644 (1965); Wiley v. United States, 165 Ct.Cl. 261 (1964); Wesolowski v. United States, 174 Ct.Cl. 682 (1966); Harper v. United States, 310 F.2d 405, 159 Ct.Cl. 135 (1962).

6. In almost all cases, the taking of *de novo* evidence has been done without objection by either side and without comment by the court. In *Furlong*, supra, 150 Ct.Cl., at 566, the court questioned the propriety of such evidence and grudgingly admitted it. More recently, in Merson v. United States, in an order dated April 15, 1966, 173 Ct. Cl. 139 (1966), the court affirmed the practice of permitting *de novo* evidence when it ordered new findings to be made upon all the available evidence bearing upon plaintiff's case.

7. This is to include a determination of whether plaintiff's ulcers are organic defects.

(2) whether the decision of the Board for the Correction of Naval Records is supported by substantial evidence when compared with all presented evidence.