Opinion for the court filed by Circuit Judge DYK.
Dissenting opinion filed by Circuit Judge NEWMAN.
DYK, Circuit Judge.
Jeffrey G. Walls (‘Walls”) appeals from a judgment of the United States Court of Federal Claims. The Court of Federal Claims rejected Walls’s contention that he was improperly transferred to the Fleet Reserve after his active duty service in the United States Navy, and rejected Walls’s claim for back pay based on his allegedly improper transfer. The Court of Federal Claims also rejected Walls’s alternative claim for back pay based on his alleged performance of military duties during a period of medical treatment after his transfer. Walls v. United States, No. 05-533C, 2008 WL 4708115 (Fed.Cl. July 30, 2008). We affirm-in-part, vacate-in-part, and remand.
BACKGROUND
Walls asserts two separate claims. For clarity we describe them separately.
I The Improper Transfer Claim
Walls served on active duty in the United States Navy (“Navy”) from September 2, 1980, through September 30, 2000. After twenty years of active duty service, enlisted personnel in Walls’s pay grade could not re-enlist, but instead could either separate from the Navy, retire for disability, or transfer to the Fleet Reserve.[1] On September 30, 2000, Walls was transferred to the Fleet Reserve. Walls contends that the transfer was improper.
Walls agrees that under the Navy’s regulations, such a transfer to the Fleet Reserve “may only be deferred [1] if the member is hospitalized or [2] a medical board [“MEB”] report has been accepted by the President, PEB [“Physical Evaluation Board”] for disability evaluation processing. 10 U.S.C. § 640 applies.”[2] U.S. Dep’t of Navy, Sec’y of the Navy Instr. 1850.4D, Department of the Navy Disability Evaluation Manual § 3710 (Dec. 23, 1998) (“SECNAVTNST”); see also Military Personnel Manual 1830-40, Transfer to the Fleet Reserve and Release from *1361 Active Duty (March 27, 2000) (“MILPERSMAN”); MILPERSMAN 1830-30, Physical Examination in Connection with Retirement, Transfers to Fleet Reserve, and as a Fleet Reservist. As discussed in greater detail below, the PEB process referenced in the regulations is designed to determine whether a service member has become permanently disabled and should be separated or retired for disability, and the referenced statute (10 U.S.C. § 640) exclusively concerns separation and retirement for disability.[3]
In past cases we have considered claims that injured service members were improperly denied disability retirement. See, e.g., Fisher v. United States, 402 F.3d 1167 (Fed.Cir.2005) (en banc in part); Heisig v. United States, 719 F.2d 1153 (Fed.Cir.1983). However, Walls does not claim that he was permanently disabled or that he was entitled to disability retirement. He asserts that he should have been given corrective medical treatment before his transfer to the Fleet Reserve.
In this respect, the factual basis for Walls’s improper transfer claim is relatively straightforward. He alleges that during his Navy service he was assigned to an aircraft carrier, and that around 1984 he injured his knee and back during an aircraft launch accident. Am. Compl. ¶¶ 28-29. Walls alleges that an F-18 fighter jet was launched while Walls was on deck, blowing him across the flight deck and causing injuries. Id. He asserts that he suffered permanent damage from the incident, and that for years thereafter he suffered pain. The pain increased about eighteen months before the date of his separation. As part of the process for transferring to the Fleet Reserve, Walls had a physical in June 2000 “to permit correction of any minor physical defects or identification of those requiring processing for disability retirement, if disability retirement is indicated, prior to the date otherwise scheduled for retirement.” See MILPERSMAN 1830-030, at 1. The physician’s report indicated Walls had “[rjecur-rent back pain” and a “ ‘[tjrick’ or locked knee” but that Walls was in “good” health and taking no medications. In early August 2000, Walls experienced knee and back pain and was examined by Dr. Cul-lom, a Navy physician. In late August 2000, Walls received an MRI scan that showed he had scoliosis and mild to moderate spinal stenosis; a June 1999 spinal x-ray had also shown “significant” scoliosis. A medical report from Walls’s September 2000 appointment with Dr. Helm, a neurosurgeon, indicated that Walls did not require surgery and that chiropractic care and pain management might be helpful. Walls was seen by Dr. Cullom again after his MRI scan. Walls does not assert that Dr. Cullom thought he was eligible for disability retirement; instead, Walls alleges that Dr. Cullom “told him that he was not fit to retire due to his injuries” and that “she would recommend ... that he be placed on ‘medical hold,’ which would keep him on active duty past his scheduled retirement date so that he could be adequately treated for his medical problems before his retirement.” Am. Compl. ¶ 39. Walls argues that he should not have been transferred until the necessary treatment was completed.
In November 2000, Walls petitioned the Board of Correction for Naval Records (“BCNR” or “corrections board”) for correction of his service records, requesting “to remain on active duty in a medical hold status, until my injury can be corrected” *1362 and asserting that he “was release[d] from the military with a[n] injury that should have been corrected.” In August 2001, the corrections board denied Walls’s petition. Walls requested reconsideration by the corrections board, and the corrections board denied this request in November 2001. Walls again requested reconsideration by the corrections board, providing additional evidence, and in December 2002 the corrections board again denied his request, finding that the new evidence was not material. In April 2003, Walls again unsuccessfully requested that the corrections board reconsider its decision not to extend his release from active duty by six months and not to award him back pay for those six months.[4]
In May 2005, Walls filed a complaint in the Court of Federal Claims, asserting claims that his transfer should have been deferred pending medical treatment and requesting back pay from September 30, 2000, through March 30, 2001, as well as additional relief. See Compl. ¶ 10 (alleging Walls’s “retirement should have been withheld until his medical condition could be corrected or resolved by the United States Navy”); Am. Compl. ¶¶ 39, 58 (alleging that Walls’s BCNR petition requested retention “on medical hold status pending the completion of his medical treatment”). The Court of Federal Claims remanded Walls’s case to the corrections board for further development of the record in August 2005.
In May 2006, the BCNR issued its remand decision, finding that Walls had not been hospitalized prior to his transfer, that no MEB had been initiated for him, and that he had been fit to reasonably perform his duties. The corrections board found that there was no credible evidence of Walls’s “inability to perform military duty,” and thus that there was “no basis for initiating a medical board.” App. 94. The corrections board also found that even if an MEB had been initiated, it was unlikely that Walls could have rebutted the presumption of fitness that applies to enlisted service members within twelve months of their mandatory separation or transfer. Id.; see SECNAVINST 1850.4D, § 3305(b)(4).[5]
Walls filed an amended complaint in the Court of Federal Claims in August 2007, seeking back pay and allowances from September 30, 2000, through mid-May 2001, as well as injunctive relief ordering correction of his naval records “to properly reflect his service to the Navy through the middle of May 2001” and attorney fees and costs. Am. Compl. ¶ 7. Walls alleged that the Navy had violated its own regulations in failing to extend his active duty service by placing him on “medical hold” pending an MEB and PEB review process. As an attachment to his amended complaint, Walls provided a new sworn declaration dated August 8, 2007, that was not presented to the corrections board.
*1363 The United States (“the government”) moved to dismiss Walls’s complaint, or in the alternative for judgment on the administrative record. The Court of Federal Claims concluded that before Walls’s transfer he had not been hospitalized, that no MEB report had been accepted by the PEB, and that there had been no violations of regulations in failing to convene an MEB. The court found that Walls failed to state a claim on which relief could be granted.
II The Full-Time Duty Claim
Walls alleges that after his transfer he was admitted to a hospital. Walls claims, assuming that he was properly transferred to the Fleet Reserve, that he is entitled to back pay for the period from October 2000 to May 2001 for performing “other full-time duty” under 37 U.S.C. § 204(a)(2). He asserts that while he received treatment at the National Naval Medical Center (“NNMC”) during this period, he performed military duties at the NNMC. Walls initially presented this claim to the Court of Federal Claims, which remanded to the BCNR to consider the claim in the first instance.
On May 17, 2006, the corrections board concluded that Walls was not entitled to any reimbursement because there was no evidence that Walls performed military duties at the NNMC. Walls then sought review of that decision in the Court of Federal Claims and filed an affidavit with the court in August 2007, providing details of his alleged military duties at the NNMC. The Court of Federal Claims concluded that “in military pay cases [review] is not limited to the administrative record but may also encompass de novo evidence.” Walls, 2008 WL 4708115, at *18. The court found that Walls’s allegations were sufficient to state a claim, but affirmed the BCNR’s decision on the administrative record. The court concluded that because there was no affirmative evidence — aside from Walls’s post-BCNR affidavit — that Walls performed any military duties at the NNMC, the BCNR did not err in finding that Walls was not entitled to back pay.
Walls timely appealed to our court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).[6]
DISCUSSION
We review legal determinations of the Court of Federal Claims, such as a dismissal for failure to state a claim or a judgment on the administrative record, without deference. Greenlee County, Ariz. v. United States, 487 F.3d 871, 877 (Fed.Cir.2007); Lewis v. United States, 458 F.3d 1372, 1376 (Fed.Cir.2006).[7]
I
We first consider Walls’s claim that his transfer to the Fleet Reserve should have been deferred pending treatment for his medical problems. As noted earlier, Navy regulations require service members being transferred to the Fleet Reserve to have a physical examination within six months before their transfer “to permit correction of any minor physical defects or identification of those requiring processing for disability retirement, if disability retirement is indicated, prior to the date otherwise scheduled for retirement.” MILPERSMAN 1830-030, at 1.
*1364 If a service member’s medical problems are not corrected before the transfer date, they may be addressed after transfer to the Fleet Reserve. Transfer may be delayed in only two situations: (1) where the service member is hospitalized at the time originally scheduled for transfer, or (2) where the PEB process “for disability evaluation processing” has been initiated at the time originally scheduled for transfer. Thus, as noted earlier, the regulations provide, “If a member is pending mandatory separation or retirement, such retirement or separation may only be deferred if the member is hospitalized or a medical board report has been accepted by the President, PEB for disability evaluation processing.” SECNAVINST 1850.4D, § 3710; see also MILPERSMAN 1830-040, at 4 (“Member ... for whom transfer to the Fleet Reserve is mandatory, may only be deferred if the member is hospitalized or a medical board report has been accepted by the President, PEB for processing under SECNAVINST 1850.4D, article 3710.”); MILPERSMAN 1830-030, at 2 (“Members pending a mandatory retirement or required to transfer to the Fleet Reserve in lieu of separation ... will not be delayed unless member is either hospitalized or a medical board report has been accepted by the Physical Evaluation Board (PEB) for disability evaluation processing prior to the mandatory retirement date.”).
We first consider Walls’s claim that he was hospitalized before his transfer to the Fleet Reserve on September 30, 2000. In his amended complaint, Walls alleges that he was hospitalized in October 2000 at the NNMR. Am. Compl. ¶ 42. Walls argues that this hospitalization should be viewed as beginning in September 2000, before his transfer, when Dr. Cullom indicated that she would recommend that Walls be placed on medical hold. Walls contends that MILPERSMAN 1830-40 (entitled “Transfer to the Fleet Reserve and Release from Active Duty”) applies, rather than MILPERSMAN 1830-30 (entitled “Physical Examination in Connection with Retirement, Transfers to Fleet Reserve, and as a Fleet Reservist”). We see no substantive difference between the two provisions. MILPERSMAN 1830-40 allows deferral of a mandatory transfer to the Fleet Reserve “if the member is hospitalized ... under SECNAVINST 1850.4D, article 3710,” while MILPERSMAN 1830-30 allows deferral of a mandatory transfer to the Fleet Reserve if a “member is ... hospitalized ... prior to the mandatory retirement date.” Nor does the reference in SECNAVINST 1850.4D, § 3710, to 10 U.S.C. § 640 suggest that transfer should be deferred absent an actual hospital admission.[8]
Thus, we see no basis for finding that Walls was hospitalized before he was admitted to a hospital. To “hospitalize” is “to place in a hospital as a patient.” Webster’s Third New International Dictionary 1094 (Merriam-Webster 2002); see also Webster’s Unabridged Dictionary 924 (Random House 2d ed.1998) (defining “hospitalize” as “to place in a hospital for medical care or observation”). The parties agree that Walls was not admitted to a hospital until after his transfer to the Fleet Reserve. Walls thus did not meet the hospitalization criterion for deferring his transfer to the Fleet Reserve.
Walls’s second contention is that an MEB must be convened if a service mem *1365 ber’s fitness for duty is “questionable,” and that an MEB should have been convened because Walls’s fitness for duty was questionable. Walls similarly contends that the MEB should have referred the matter for PEB processing because of questionable fitness. He claims that the corrections board and the Court of Federal Claims failed to apply the proper standard of “questionable” fitness.
We think Walls misunderstands the purpose of the PEB process. That process is designed to identify individuals who should be separated or retired for disability because of a permanent disabling medical condition — not to identify those individuals requiring further treatment for a temporarily disabling condition. Section 3710 of SECNAVINST 1850.4D states that “10 U.S.C. § 640 applies,” and this statute provides for deferment of retirement or separation “if the evaluation of the physical condition of the officer and determination of the officer’s entitlement to retirement or separation for physical disability require hospitalization or medical observation that cannot be completed before the date on which the officer would otherwise be required to retire or be separated.” 10 U.S.C. § 640 (2000) (effective through December 27, 2001) (emphasis added). The legislative history of this provision further indicates that such a deferral is not for treatment but for disability evaluation. The House Report accompanying § 640 states that the statute allows, “in the event hospitalization or medical observation is necessary to determine entitlement ... to retirement or separation for physical disability ... retirement or separation can be deferred by the secretary concerned.” H.R.Rep. No. 96-1462, at 78 (1980), U.S.Code Cong. & Admim News 1980, pp. 6333 . The reference to 10 U.S.C. § 640 in SECNAVINST 1850.4D, § 3710, thus confirms that deferral of a mandatory transfer is not for medical treatment but is instead for evaluating disability separation or retirement.
This purpose is confirmed by other regulatory provisions. A case enters the Navy’s Disability Evaluation System when an MEB “is dictated for the purpose of evaluating the diagnosis and treatment of a member who is unable to return to military duty because the member’s condition most likely is permanent” SECNAVINST 1850.4D, § 3102(a) (emphasis added). Pursuant to SECNAVINST 1850.4D, the PEB “decides Unfitness to continue naval service” and whether “the member is eligible for disability benefits.” § 10001, at 10-3 to 10-4 (Dec. 23, 1998) (emphasis added).
Navy regulations state that “[a]s a general rule, an active duty member ... will be referred for disability evaluation only by a medical board that has found the member’s Fitness for continued active service questionable by reason of physical or mental impairment.” SECNAVINST 1850.4D, § 3201(a) (emphases added). What is “questionable” in the PEB system is whether a service member’s condition is permanently disabling, not whether a service member needs medical treatment.
A case enters the Department of the Navy [Disability Evaluation System] when a Medical Evaluation Board (MEB) is dictated for the purpose of evaluating the diagnosis and treatment of a member who is unable to return to military duty because the member’s condition most likely is permanent, and/or any further period of temporary limited duty (TLD) is unlikely to return the member to full duty.
SECNAVINST 1850.4D, § 3102(a) (emphases added). Our caselaw similarly has described the PEB process as a disability retirement evaluation process. See, e.g., McHenry v. United States, 367 F.3d 1370, 1372-73 (Fed.Cir.2004) (“In order to deter *1366 mine the existence and extent of disability, the Secretary established a PEB in 1990 to act on behalf of the Secretary of the Navy ... in making determinations of fitness for duty, entitlement to benefits, and disposition of service members referred to the Board.” (quotation marks omitted)); Moyer v. United States, 190 F.3d 1314, 1316 (Fed.Cir.1999) (describing an MEB as part of a process “which ordinarily can lead to a discharge based upon disability”).[9]
Walls’s assertion that the PEB is concerned with determining the need for corrective medical treatment is not supported by the Navy’s regulations. To be sure, an MEB may be convened for purposes other than determining whether a permanent disability exists and referring the matter to a PEB. An MEB may be convened “to identify members whose physical and/or mental qualification to continue on full duty is in doubt or whose physical and/or mental limitations preclude their return to full duty within a reasonable period of time.” SECNAVINST 1850.4D, § 2042. MEBs “evaluate and report on the diagnosis; prognosis for return to full duty; plan for further treatment, rehabilitation, or convalescence; estimate of the length of further disability; and medical recommendation for disposition of such members.” Id. An MEB may recommend temporary light duty for a period of thirty days “for the purpose of evaluation or treatment of a medical condition.” SECNAVINST 1850.4D, § 1008. The regulations also provide that if a service member “is unable to return to full military duty at the end of 30 days of light duty, the member will be placed in [medical treatment facility] Medical Hold for up to 30 additional days, pending evaluation by a Medical Board for the purpose of placement on [temporary limited duty] or referral to the PEB.” Id.
Even if Walls were correct that an MEB should have been convened because of his questionable fitness for duty and the need to consider medical treatment, there is no basis for his claim that the convening of an MEB (without PEB processing) would have deferred his separation. The regulations do not authorize deferral of mandatory separation based either on the convening of an MEB or the imposition of a medical hold. Indeed, section 3710 of SECNAVINST 1850.4D is quite clear that separation will be deferred only if the service member is being processed by the PEB for permanent disability separation or retirement pursuant to 10 U.S.C. § 640.[10] Because Walls is not claiming entitlement to disability retirement, Walls thus cannot meet the condition for deferring his transfer to the Fleet Reserve based on PEB processing.
II
Assuming his transfer to the Fleet Reserve was proper, Walls alternatively *1367 claims entitlement to back pay under 37 U.S.C. § 204(a)(2) for performing “other full-time duty” during his medical treatment at the NNMC from October 2000 through mid-May 2001. Walls provided details of his alleged military duties at the NNMC only to the Court of Federal Claims in his 2007 amended complaint and its attached affidavit, rather than to the BCNR before its 2006 remand decision. The government argues that Walls, having failed to present this evidence to the BCNR, was barred from presenting it to the Court of Federal Claims, and that thus no evidence supported Walls’s compensation claim. Walls argues that the Court of Federal Claims could properly consider his affidavit, even though it was not before the BCNR, relying on the 1968 decision of our predecessor court where we held that a reviewing court could consider “evidence over and above that presented before the administrative boards if a party wishes to offer it.” Brown v. United States, 184 Ct.Cl. 501, 396 F.2d 989, 991 (1968); see also Beckham v. United States, 179 Ct.Cl. 539, 375 F.2d 782, 785 (1967).
After our decision in Brown, it has become well established that judicial review of decisions of military correction boards is conducted under the APA.[11] Also after Brown, the Supreme Court has established that review under the APA is generally limited to the administrative record. In Florida Power & Light Co. v. Lorion, the Supreme Court stated that “[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court.” 470 U.S. 729, 743-44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). If the record is inadequate, “[t]he reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry,” and instead “the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.” Id. at 744, 105 S.Ct. 1598.[12] The Court emphasized that “[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.” Id. at 743, 105 S.Ct. 1598 (quoting Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)); cf. Marsh v. Or. Natural Res. Council, 490 U.S. 360, 375-78, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989).
We recently reaffirmed the principle that parties must make the administrative record before the agency in Axiom Resource Management, Inc. v. United States, 564 F.3d 1374, 1381 (Fed.Cir.2009), where we stated that “[t]he focus of judicial review of agency action remains the *1368 administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA.” See also Levine v. United States, 453 F.3d 1348, 1350 (Fed.Cir.2006); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed.Cir.2001). Similarly, we have also recently ruled that review of a military corrections board is limited to the administrative record:
[W]hen a service member does pursue such relief [from a military corrections board], the Court of Federal Claims reviews the Board’s action under the same standard as any other agency action. Thus, the Court of Federal Claims should have applied its ordinary standard of review to those disputes of fact occurring in the proceedings at the Board: “whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law.” This necessarily limits the Court of Federal Claims’ review to the administrative record.
Metz, 466 F.3d at 998 (citations omitted, emphasis added).[13]
We need not, however, in this case decide whether Brown is good law in the light of subsequent Supreme Court authority. Under Brown itself, “[s]hould it become clear in a particular case that a claimant has held back evidence in order to offer it in court, the obvious and simple remedy is to exclude it.” 396 F.2d at 998-99. Here, the corrections board specifically requested “a statement of ... the military duties you performed, if any, during the 1 July-30 September 2000 and 1 October-31 March 2001 periods.” App. 101. Walls did not respond to the request, App. 90, instead waiting until filing his amended complaint in the Court of Federal Claims to provide his declaration supporting his claim. There is no suggestion that the declaration could not have been submitted to the corrections board. Under these circumstances Walls could not withhold his declaration from the corrections board and then submit it in the first instance to the Court of Federal Claims. This is not one of those situations where supplementation of the administrative record is appropriate. See, e.g., Impresa Construzioni, 238 F.3d at 1338-39.
Walls here submitted no evidence to the BCNR supporting his claim for back pay. Ordinarily this would require affirmance. However, under the circumstances raised in this case, we think it is appropriate that Walls be given an additional opportunity to present his evidence to the BCNR.
We vacate the judgment of the Court of Federal Claims and remand to the Court of Federal Claims, with direction to remand to the BCNR, for consideration of Walls’s 2007 affidavit on the question of whether he was entitled to active duty pay from October 2000 through mid-May 2001 based on the performance of duties after his transfer.
CONCLUSION
We affirm the judgment of the Court of Federal Claims that Walls’s transfer to the Fleet Reserve was not improper. We vacate the judgment of the Court of Federal Claims rejecting Walls’s claim for back pay from October 2000 to mid-May 2001 based on his post-transfer service, and remand to the Court of Federal Claims so that the court may remand to the BCNR for consideration of Walls’s evidence regarding his alleged post-transfer service at the NNMC.

AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

*1369 COSTS
No costs.

. Walls was not eligible for retirement pay under "voluntary retirement,” which requires thirty years of active service. See 10 U.S.C. § 6326. In September 2000 Walls was in pay grade E6, which allowed re-enlistment "up to a maximum of 20 years day-for-day active service.” Chief of Naval Operations Instruction 1160.5C, § 5(b)(4) (Oct. 18, 1993).

. Section 640 remains in effect, although its language has been changed slightly since the version of the statute that applied to Walls in 2000. Compare 10 U.S.C. § 640 (2006), with 10 U.S.C. § 640 (2000). Although the statute refers only to “officers," the Navy regulations incorporating § 640 apply to enlisted personnel. See SECNAVINST 1850.4D, § 2043 (“Unless otherwise defined, a 'member' may be a[n] ... enlisted person of the regular or reserve forces.”).

. Not all permanent disabilities lead to disability severance or disability retirement. See 10 U.S.C. § 1201(b)(2) (disallowing disability retirement benefits if the disability is "the result of the member's intentional misconduct or willful neglect” or was “incurred during a period of unauthorized absence”).

. In late 2002, the Veterans Administration ("VA") awarded Walls a twenty percent disability rating for his service-connected chronic low back strain and a ten percent disability rating for his service-connected left knee ligament injury.

. SECNAVINST 1850.4D, § 3305(c)(1) provides that the presumption of fitness would be overcome if during the twelve months before separation "a serious deterioration of a previously diagnosed condition, to include a chronic condition, occurs and the deterioration would preclude further duty if the member were not retiring,” or "an acute, grave illness or injury occurs that would prevent the member from performing further duty if he or she were not retiring.” The presumption would be "considered to have been overcome” if the natural progression of the condition “normally results in either significant life-span reduction/death or deterioration to the point where it could warrant a permanent disability rating of 60 percent.” Id.

. Walls was represented before our court pro bono by Colin R. Kass and Rebecca A. Koch. We thank Walls's counsel for their service.

. Walls's claims for back pay are justiciable. See Fisher, 402 F.3d at 1177 ("Though the question of fitness to serve may be nonjusticiable in various contexts, we have consistently noted that a challenge to a particular procedure followed by the military in rendering a decision may present a justiciable issue.”).

. Section 640 provides for deferral if evaluation and determination of entitlement to disability separation or retirement "require hospitalization or medical observation that cannot be completed before the date on which the officer would otherwise be required to retire or be separated.” 10 U.S.C. § 640 (2000) (effective through December 27, 2001).

. See also Manual of the Medical Department, art. 18-25(1) (Jan. 10, 2005) (“MANMED'') ("For patients whose care is deferrable and/or elective, it is not appropriate for [medical treatment facilities] caring for patients with an impending separation date who present with conditions for which care is deferrable and elective to attempt to forestall the established separation or retirement date.”).

. The Navy’s Manual of the Medical Department defines "elective care” as treatment that "could be performed at another time or place without jeopardizing the patient's life, limb, health, or well-being,” and also states that "[i]n cases involving would-be retirees and ‘elective’ care, the requirement to maintain the member on active duty is not compelling in many cases, as retirees still have Federally-mandated access to care within the direct care infrastructure of the [Military Health System]. Only in those cases where the would-be retiree can assert an impact on any potential disability determination status should consideration of retention on active duty be entertained.” MANMED art. 18-25(1)(b)(2), 18 — 25(1)(c).

. See, e.g., Metz v. United States, 466 F.3d 991, 998 (Fed.Cir.2006) (noting that the Court of Federal Claims reviews decisions of a military corrections board “under the same standard as any other agency action”); Fisher, 402 F.3d at 1180 (holding that our review of a military correction board applies "essentially the standard under which administrative agency decisions are reviewed”); Gillan v. Winter, 474 F.3d 813, 817 (D.C.Cir.2007) ("[BJecause the BCNR decision was also a final agency action, the APA requires us to determine whether it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.’ ”); Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514 (D.C.Cir.1989) ("[Decisions of the [Corrections] Board are reviewable under the APA_”).

. The Court of Federal Claims has authority under the Tucker Act to remand to a corrections board. See 28 U.S.C. § 1491(a)(2) ("In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.”). The corrections board has the authority to conduct an evidentiary hearing. See 32 C.F.R. §§ 723.3(e), 723.4.

. "This is not to say that the Court of Federal Claims loses its ability to hold evidentiary hearings to determine jurisdictional facts, or to consider 'extra-record' evidence in extremely limited situations.” Metz, 466 F.3d at 998.