# In the United States Court of Federal Claims

No. 12-024 C
(Filed: August 26, 2013)

```
**************************************
ROB W. FREY,                          *
                                      *
          Plaintiff,                  *
                                      *       RCFC 12(b)(6); RCFC 52.1(c); Disability
v.                                    *       Determination; Board for Correction of
                                      *       Military Records; Remand
THE UNITED STATES,                    *
                                      *
          Defendant.                  *
**************************************
```

Noel Douglas Culbert, Dewitt, MI, for plaintiff.

Joseph E. Ashman, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court are defendant's motion to dismiss and the parties' cross-motions for judgment upon the administrative record. Former First Lieutenant Rob W. Frey in the Michigan Air National Guard contends that he suffers from service-connected sleep apnea and asserts that the United States Air Force ("Air Force") failed to abide by its statutory obligations to provide him with the aid, assistance, disability retirement benefits, and health coverage to which he was entitled under federal law and regulations. For the reasons stated below, the court denies the government's motion to dismiss and the parties' cross-motions for judgment upon the administrative record, and remands this matter to the Air Force Board for Correction of Military Records ("AFBCMR" or "Board") to consider issues not specifically addressed below.

## I. BACKGROUND

Mr. Frey began service with the Air National Guard on January 12, 2002.[1] A6. While he was assigned to the 127th Wing, Mr. Frey received orders placing him on active duty with the Air Force beginning on July 10, 2004, in order to be trained as a flight navigator. A40-41. Mr. Frey was initially assigned to Randolph Air Force Base ("AFB"), Texas, but on August 5, 2005,

---

[1] The facts are derived from the administrative record ("A__"). See Walls v. United States, 582 F.3d 1358, 1368 (Fed. Cir. 2009) (indicating that "review of a military corrections board is limited to the administrative record").

Mr. Frey received orders to attend further training at Little Rock AFB, Arkansas. A40, 43-44. These orders stated that Mr. Frey's active duty status would terminate on February 22, 2006. A43. While stationed at Little Rock AFB, Mr. Frey was assigned to the 314th Air Lift Wing. A45.

On November 16, 2005, the Air Force medically restricted Mr. Frey from flying after he reported experiencing chest pains that ultimately led to a diagnosis of obstructive sleep apnea. A45, 52. On December 14, 2005, Mr. Frey underwent a polysomnogram sleep study at the Arkansas Center for Sleep Medicine, and as a result, Mr. Frey was diagnosed with sleep apnea of a severity requiring nasal surgery and a tonsillectomy. A46-48. It was further determined that until the surgery could be conducted, Mr. Frey would benefit from the use of a continuous positive airway pressure ("CPAP") device. A46.

On February 22, 2006, Mr. Frey underwent nasal surgery and a tonsillectomy. A49. A second sleep study was scheduled for late April 2006 to determine the surgery's effectiveness. A52. On April 6, 2006, the Air Force Flight Medicine Flight Commander initiated a line of duty determination for Mr. Frey, A52-53, in which he remarked that:

(1) If follow [sic] sleep study reveals correction of the problem by surgery alone [Mr. Frey] will be returned to full duty, no profile. He will be returned to fly after successfully completing altitude chamber test to 5,000 ft. Use of an oral device would require waiver to fly.

(2) If sleep study shows persistent sleep apnea with need for a C-PAP machine, a[] [Medical Evaluation Board ("MEB")] will be generated.

A52. On April 24, 2006, Mr. Frey underwent a post operational sleep study at the Arkansas Center for Sleep Medicine. A49. While Mr. Frey demonstrated marked improvement in his condition, the surgery did not fully resolve his sleep apnea without use of the CPAP device. Id.

On April 26, 2006, the Air Force Flight Medicine Flight Commander recommended that Mr. Frey "be disqualified from Flying Class II" status. A56. On May 4, 2006, the Air National Guard Office of the Air Surgeon certified that Mr. Frey was "Medically Disqualified For WorldWide Duty." A54. The same office also noted that Mr. Frey's sleep apnea "seems" to have existed prior to service and therefore was not incurred in the line of duty. A55. That office recommended that the Air National Guard investigate Mr. Frey for the possibility of fraudulent enlistment. Id. On May 12, 2006, the Air Force completed the line of duty determination begun by the Air Force Flight Medicine Flight Commander, concluding that Mr. Frey's sleep apnea "was a pre-existing condition discovered during training," and recommended a finding of "EPTS [existed prior to service]-LOD [line of duty] Not Applicable." A53.

The Air Force convened an MEB on May 18, 2006, to determine whether Mr. Frey was eligible for "continued active duty." A51. After evaluating Mr. Frey's medical records, the MEB diagnosed Mr. Frey with "sleep apnea with C-PAP," with an approximate onset date of December 15, 2005. Id. Contrary to the line of duty determination, the MEB concluded that Mr. Frey's condition did not exist prior to his entrance into service. Id. The MEB recommended that

Mr. Frey "return to duty." Id. On May 19, 2006, the Chief of Medical Staff for Little Rock AFB approved the MEB's recommendation. Id. Four days later, Mr. Frey signed the MEB's report, acknowledging that he had been informed of the MEB's findings and recommendations. Id.

Although the MEB concluded that Mr. Frey's sleep apnea did not prevent him from continuing active duty service with the Air Force, the Air National Guard Office of the Air Surgeon's certification that Mr. Frey's condition rendered him "medically disqualified for worldwide duty" necessitated his discharge from the Air National Guard. A54, 62. On June 21, 2006, the Air National Guard informed Mr. Frey that he would be discharged and advised him that he could appeal the disqualification determination through the Air National Guard's Disability Evaluation System. A62. The Air National Guard explained that the Disability Evaluation System would only address the issue of Mr. Frey's fitness for continued military service with the Air National Guard, and that the process would not result in Mr. Frey receiving any medical compensation. A64. The Air National Guard further explained that the MEB's finding that Mr. Frey was fit for continued active duty in the Air Force was a separate and unrelated determination from the Air National Guard Office of the Air Surgeon's finding that he was "medically disqualified for worldwide duty":

> Keep in mind that the Boards look to see if you are able to do a job and [Air National Guard]/[Surgeon General] looks to see if you are deployable. So know that just because you are found fit from the board does not mean that you will be found worldwide deployable from [Air National Guard]/[Surgeon General]. Also remember that a ruling of being found fit cannot be appealed.

Id. (emphasis omitted). On June 21, 2006, Mr. Frey signed an attachment to the Air National Guard's discharge notification indicating that he wished to have his case "referred to the [Disability Evaluation System] solely for a fitness determination." A66. On June 30, 2006, the Air Force released Mr. Frey from active duty status. A90.

On August 4, 2006, Mr. Frey wrote to the Air National Guard requesting that it assist him with disability processing pursuant to 10 U.S.C. § 1201 (2006). A69. Five days later, Mr. Frey informed the Air National Guard that he would not appeal the Air National Guard Office of the Air Surgeon's certification that he was "medically disqualified from worldwide duty." A71. On October 19, 2006, the Air National Guard informed Mr. Frey that it is "not responsible for processing [his] appeal of [his] Active Duty disability processing. . . . That is an issue for the Board for Corrections to Military Records and is outside the bounds of this office, or the [Air National Guard] to answer." A78. On November 22, 2006, the Air National Guard administratively separated Mr. Frey from service with an honorable discharge for medical disqualification. A93. Before he was discharged, Mr. Frey submitted a disability claim to the United States Department of Veterans Affairs ("VA"). A89. On June 22, 2007, the VA granted Mr. Frey a service connected disability rating of 50% for sleep apnea. A89-90. The VA awarded Mr. Frey retroactive benefits beginning on July 1, 2006, which was the day after the Air Force released him from active duty. A90.

## II. PROCEDURAL BACKGROUND

On January 29, 2008, Mr. Frey submitted an application for the correction of military records to the Board, requesting that the Board: (1) reverse the Air Force's line of duty finding that his sleep apnea existed prior to service and to expunge this finding from his records; (2) find that he was improperly denied Disability Evaluation System processing; and (3) grant incapacitation pay and access to government-provided health care. A11-13. In support of his contention that he was improperly denied Disability Evaluation System processing, Mr. Frey argued that this denial was caused by the Air Force's erroneous line of duty finding, and that the VA's finding that his sleep apnea warranted a disability rating of 50% demonstrated his entitlement to medical retirement benefits from the Air Force. A26-33.

After reviewing Mr. Frey's application and service record, the Board, on May 26, 2009, ruled that: (1) any record indicating that Mr. Frey's sleep apnea existed prior to service be expunged; (2) Mr. Frey's service record be revised to show that he was released from active duty with the Air National Guard on November 22, 2006; and (3) the Air Force MEB's finding that Mr. Frey should be returned to duty was supported by the record. A9-10. The Board further stated that Mr. Frey's "argument that the VA assigned the applicant a 50% disability rating intimating that the Air Force should do the same [was] without merit as the VA and the Air Force disability systems are two separate and distinct entities governed by two separate laws." A9.

On January 11, 2012, Mr. Frey filed a complaint in this court, which he subsequently amended on July 27, 2012. Mr. Frey contends that he has been denied disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201 and § 1203, as a result of the Air Force's failure to follow the applicable regulations and law. First Am. Compl. ¶ 30. He asserts that the MEB failed to find him not fit for duty, and the Air Force failed to rate Mr. Frey as at least 50% disabled. Id. Mr. Frey requests, amongst other things:

a. payment of all wrongfully denied pay and allowances due to him under the law, including military disability retirement pay based upon a proper rating of his disabilities by the United States;

b. payment for retroactive retirement benefits from the date of his separation (November 22, 2006, as corrected by the AFBCMR), based on a disability rating of 50%, and any medical expenses incurred by Mr. Frey and his family following his separation from the military unlawfully denied Mr. Frey at that time;

c. payment for retirement pay and the provision of medical benefits going forward based on a proper disability rating of 50%; and

d. that the court find the AFBCMR's decision denying Mr. Frey a second MEB and disability retirement as arbitrary, capricious, not supported by substantial evidence, and in violation of applicable law or regulation.

Id. at 9-10.

On July 11, 2012, the government moved to dismiss the complaint, or, in the alternative, for judgment upon the administrative record. The court denied the motion as moot because plaintiff filed an amended complaint. On August 7, 2012, the government filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), or in the alternative, for judgment upon the administrative record. Plaintiff filed a cross-motion for judgment upon the administrative record. The parties have completed briefing, and the court finds oral argument unnecessary.

## III.  LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

The jurisdiction of the United States Court of Federal Claims ("Court of Federal Claims") is established by the Tucker Act. See 28 U.S.C. § 1491 (2006). The Tucker Act authorizes the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Id. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. See Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls upon the plaintiff. See FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990).

Plaintiff's amended complaint invokes the jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), and 10 U.S.C. §§ 1201, 1203 (2008). The United States Court of Appeals for the Federal Circuit ("Federal Circuit"), in Fisher, held that when 10 U.S.C. § 1201 is coupled with the Tucker Act, subject matter jurisdiction is valid in the Court of Federal Claims. 402 F.3d at 1184. The same is true for allegations under 10 U.S.C. § 1203. Verbeck v. United States, 89 Fed. Cl. 47, 61 (2009) ("[10 U.S.C. §] 1203 is a money-mandating statute for the same reasons that Section 1201 is a money-mandating source of law for purposes of jurisdiction of this court."). Therefore, the court has subject matter jurisdiction over plaintiff's claims.

## B. Statutory and Regulatory Framework

Congress set guidelines for the retirement or separation of military members of the Armed Forces due to physical disability. See 10 U.S.C. § 1201. In addition to regular active duty members, members of the Air National Guard are eligible for disability separation or retirement if, at the time a disability is incurred, they are "entitled to basic pay" and have "been called or ordered to active duty . . . for a period of more than 30 days." Id. § 1201(c)(2). In order to maintain "a fit and vital force," the Disability Evaluation System is the military's process that "allows the Secretary of the Air Force (SAF) to remove from active duty those who can no longer perform the duties of their office, grade, rank or rating and ensure fair compensation to members whose military careers are cut short due to a service-incurred or service-aggravated physical disability." See Air Force Instruction ("AFI") 36-3212, Physical Evaluation For Retention, Retirement, and Separation, ¶ 1.1.1 (Feb. 2, 2006). When members enter into the Disability Evaluation System, they are presumed fit. AFI 41-210, Patient Administration Functions, ¶ 10.1.3 (Mar. 22, 2006). This presumption may be "overcome only if clear and convincing evidence to the contrary is established by a preponderance of evidence" that "an acute, grave illness or injury" occurs that prevents the member from performing further duty, or "a serious deterioration of a pre[]viously diagnosed condition" occurs that prevents "the member from performing further duty." Id. The Disability Evaluation System is comprised of four elements—the medical evaluation by MEBs, the physical disability evaluation by Physical Evaluation Boards ("PEBs"),[2] service member counseling, and the final disposition by appropriate personnel authorities. See Department of Defense Instruction 1332.38, Physical Disability Evaluation, Encl. 3, ¶ E3.P1.1 (Nov. 14, 1996). "The MEB is the first step in the Air Force dis[]ability evaluation process to determine who is not worldwide qualified." AFI 41-210, ¶ 10.1.1.

The medical condition of "[o]bstructive sleep apnea requiring Continuous Positive Airway Pressure (CPAP) device" mandates MEB processing. AFI 48-123, Medical Examinations and Standards, Attach. 2, ¶ A2.2.1.4 (May 22, 2001). The MEB may recommend one of two actions: (1) "Return to Duty (fully worldwide qualified)"; or (2) "Forward to Informal PEB (continued worldwide qualification is questionable)." AFI 41-210, ¶ 10.7.3. Cases referred to a PEB are first presented to an Informal PEB. AFI 36-3212, ¶ 3.33. To determine a member's fitness for duty, the Informal PEB "reviews appropriate medical and personnel records, and related documentation." Id. If the member disagrees with the Informal PEB's finding, the member may request a Formal PEB. Id. ¶ 3.39. The Formal PEB "[g]ives members recommended for discharge or retirement the opportunity to appear in person . . . , to be represented by an appointed military counsel or counsel of their choice, and to present evidence and call witnesses." Id. ¶ 3.38. The Formal PEB satisfies the statutory requirement

---

[2] A PEB "is a fact-finding body that investigates the nature, origin, degree of impairment, and probable permanence of the physical or mental defect or condition of any member whose case it evaluates." AFI 36-3212, ¶ 3.1. There are two PEBs—an Informal PEB and a Formal PEB. Id. "If either board finds a member unfit, it recommends appropriate disposition based on the degree of impairment caused by the disabling condition, the date incurred, and the member's line of duty status." Id.

under 10 U.S.C. § 1214 that a member recommended for disability retirement or discharge receive a "full and fair hearing." Id. ¶ 3.2. If the member disagrees with the Formal PEB's findings, the member can submit a rebuttal to the recommended findings of the PEB to the Secretary of the Air Force Personnel Council for final review and action. Id. ¶ 5.4.1.

If, on the other hand, the MEB recommends that the service member be returned to duty, that "disposition is final and may not be rebutted by the member unless new and compelling evidence or information is presented that would render consideration of a differing decision." AFI 41-210, ¶ 10.1.5. A service member may be returned to active duty even though his or her medical condition limits the types of duties the member may perform. See generally AFI 48-123, ¶ 10. In such circumstances, the member is assigned a "profile," which "classifies individuals according to physical functional abilities." Id. ¶ 10.2. For example, an "Assignment Limitation Code C" ("ALC-C") profile indicates that a member's medical condition renders him or her "not medically suitable for worldwide assignability or global deployment." Id. ¶ 10.10.1.5. Thus, while a member with an ALC-C profile would be restricted from certain overseas deployment assignments, the member could continue on active service assigned to stateside duty locations and not be subject to disability discharge or retirement under 10 U.S.C. § 1201. Id., Attach. 18, ¶ 18.1.1 ("Individuals returned to duty as 'fit' by Physical Evaluation Boards (PEB) may not meet deployment standards. Such individuals, if they are retained, must have profiles restricting them from deployment duties. They may be assignable to locations with large, fixed military medical treatment facilities."). A member with a profile that limits the member's ability to perform his or her current duty assignment may undergo retraining in a career field that is compatible with the member's physical limitation. AFI 48-123, ¶ 10.5.3.

When an MEB returns to duty an Air National Guard member on active duty status, the MEB's action may not mean that the member may continue service with the Air National Guard. Id. The Air National Guard applies separate procedures and standards for determining whether its members should be separated from service. See generally, AFI 36-3209, Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members (Apr. 14, 2005). In some cases, the Air National Guard separation process affords members an opportunity to enter into the Disability Evaluation System, but only for the limited purpose of a fitness determination. AFI 36-3212, ¶ 8.19.

## IV. DISCUSSION

### A. Defendant's RCFC 12(b)(6) Motion to Dismiss

#### 1. RCFC 12(b)(6) Standard of Review

To survive a motion to dismiss pursuant to RCFC 12(b)(6), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Moreover, the grounds of entitlement to relief "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). In ruling on an RCFC 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a

light most favorable to plaintiff.  Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).

## 2.  Plaintiff's Claims Are Justiciable

Pursuant to RCFC 12(b)(6), defendant contends that the court must dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted because the relief plaintiff seeks requires the court to engage in the nonjusticiable exercise of reviewing the merits of the MEB's determination regarding plaintiff's fitness for service.  Defendant cites case law in support of its position that the merits of the military's fitness for duty determinations are nonjusticiable.  See Fisher, 402 F.3d at 1176-77 ("When the question is one of physical or mental fitness for service in the military, courts are loath to interfere with decisions made by the President and his designated agents."); Sargisson v. United States, 913 F.2d 918, 921-22 (Fed. Cir. 1990) (holding that a complaint challenging the Air Force's reduction-in-force decision was nonjusticiable); Reisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province.").

The court finds that plaintiff's claims are justiciable.  First, plaintiff alleges that the decision of the Board denying plaintiff a second MEB and disability retirement "is arbitrary, capricious, not supported by substantial evidence, and in violation of applicable law or regulation."  Am. Compl. 10.  As the Federal Circuit held in Fisher, a case where a former service member appealed to the Board the Air Force's MEB decision which found him fit for continued military duty, such a challenge was justiciable.  Fisher, 402 F.3d 1167, 1180-83 (Fed. Cir. 2005).  Because plaintiff challenges the decision of the Board, the court's review of that decision is justiciable.

Moreover, plaintiff also asserts that the government violated several regulations, and as a result, plaintiff has been denied the disability retirement pay and benefits to which he is entitled. Am. Compl. 9.  For instance, plaintiff contends that a prerequisite to enter the Disability Evaluation System is a finding of "in line of duty," AFI 41-210, ¶ 10.4.1, which must be part of the MEB package, but that there was no line of duty determination.  Pl.'s Resp. 13 (noting that Mr. Frey's condition was "no LOD [line of duty]-EPTS [existed prior to service]").  Plaintiff also asserts that all line-of-duty determinations must be reviewed by Air Reserve Component ("ARC") headquarters, which was not done, and all MEBs of ARC members must be forwarded to the appropriate ARC Surgeon General for review and action, which was not done.  The Federal Circuit has held that a challenge to a "particular procedure followed by the military in rendering a decision may present a justiciable issue."  Fisher, 402 F.3d at 1177; id. ("Even when Congress has given the military discretion in conducting its affairs, the military is bound to follow its own procedural regulations should it choose to promulgate them.").  Thus, a "court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion," and such a case "presents a justiciable controversy because the tests and standards against which the court measures the military's conduct are inherent in the requirements of the applicable regulation itself."  Id. (citation and internal quotation marks omitted).  Here, plaintiff's claims are justiciable, and as a result, defendant's motion to dismiss is denied.

**B. Cross-Motions for Judgment on the Administrative Record Under RCFC 52.1**

**1. Standard of Review Under RCFC 52.1**

"When ruling upon an RCFC 52.1 motion for judgment upon the administrative record, the court must decide 'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" Peterson v. United States, 104 Fed. Cl. 196, 204 (2012) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006)). "Unlike within the summary judgment context, the existence of genuine issues of material fact neither precludes the court from granting judgment upon the administrative record nor requires it to conduct evidentiary proceedings." Id. (citing Johnson v. United States, 93 Fed. Cl. 666, 672 (2010)). "When ruling on a motion for judgment upon the administrative record, the court makes 'factual findings . . . from the record evidence as if it were conducting a trial on the record.'" Id. (quoting Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005)). "[J]udgment on an administrative record is properly understood as intending to provide for an expedited trial on the administrative record." Bannum, Inc., 404 F.3d at 1356.

"The court's review is limited to determining whether final agency action was 'arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law.'" Peterson, 104 Fed. Cl. at 204 (quoting Fisher, 402 F.3d at 1180). "When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998). Courts do not serve as a "super correction board." Skinner v. United States, 594 F.2d 824, 830 (Ct. Cl. 1979). "The Court of Federal Claims . . . defers to administrative decisions regarding a service member's fitness for duty." Peterson, 104 Fed. Cl. at 204 (citation and internal quotation marks omitted); see Fisher, 402 F.3d at 1176-77 ("When the question is one of physical or mental fitness for service in the military, courts are loath to interfere with decisions made by the President and his designated agents."); Doe v. United States, 132 F.3d 1430, 1434 (Fed. Cir. 1997) ("When a branch of the armed forces has made a decision concerning who is or who is not fit to serve, that decision is generally entitled to great deference."); Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." (footnotes omitted)).

Although military personnel "do not leave constitutional safeguards and judicial protection behind when they enter the military service," v. United States, 510 U.S. 163, 194 (1994), they must "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith," v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979) (en banc), in part by statute, 10 U.S.C. § 628 (2000 & Supp. I 2002), recognized v. United States, 322 F.3d 1317, 1323-24 (Fed. Cir. 2003). Nonetheless, "correction boards must examine relevant data and articulate satisfactory explanations for their decisions." Van Cleave v. United States, 70 Fed. Cl. 674, 679 (2006).

"This includes making rational connections between the facts found and the choices made." Id. A court "may find a correction board's decision arbitrary and capricious if the board fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence before the board or 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Id. at (quoting Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). The court has the "power to review whether the military has complied with established procedures in reaching its decision." Fisher, 402 F.3d at 1177. Additionally, "[w]hen there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though, only to ensure that the decision is made in the proper manner." Id.

## 2. The Board's Decision Did Not Rest on Complete Information

Plaintiff contends that he was processed by the Air Force under the active duty MEB Disability Evaluation System procedures, rather than the one for ARC members, and as a result, the Board's decision was based on incomplete information. Plaintiff argues that the Air Force had no authority to convene an MEB in contravention of the ARC Disability Evaluation System. According to plaintiff, there is no regulation that would make such an MEB determination, made before the ARC MEB process began, binding on the Air National Guard, especially considering that the Air National Guard would have to review the MEB examination and that the Air National Guard had previously disqualified Mr. Frey from worldwide duty and all military duty. Therefore, plaintiff argues that once the Board found that plaintiff's sleep apnea was in the line of duty, and because the Air National Guard disqualified him from worldwide and any military duty, the Board should have referred the matter to the Air National Guard for Disability Evaluation System processing, which would take into consideration the previous Air National Guard disqualification.

A brief discussion of the difference between active duty and ARC member Disability Evaluation System processing is appropriate. There are numerous steps in the ARC MEB process, as illustrated by AFI 41-210, Figure 10.2. First, the provider questions the member's qualifications for worldwide duty. This is determined by a line of duty investigation, which is a prerequisite to enter the Disability Evaluation System. Next, it is determined whether the member is on active duty or in the ARC, at which point the processes diverge. If the member is on active duty, the case is referred to a local MEB. However, the process for an ARC member has additional steps. For an ARC member, the Physical Evaluation Board Liaison Officer (referred to as "PEBLO" in Figure 10.2) contacts the ARC medical facility to determine eligibility for medical processing. The ARC then determines eligibility for Disability Evaluation System processing. If the member is not eligible for disability processing, the member is referred to the ARC medical facility for "appropriate processing," but if the member is eligible, the active duty medical treatment facility (referred to as "AD MTF" in Figure 10.2) forwards the completed MEB to the appropriate ARC Surgeon General, which then reviews, coordinates, provides comments, and forwards the case to the Air Force Personnel Center (referred to as "AFPC" in Figure 10.2). Once the case gets to the Air Force Personnel Center, the Disability Evaluation System process is the same as for those on active duty: disability processing is completed, and it is determined whether the ARC member is either fit or unfit for duty.

In response, defendant asserts that plaintiff did not raise before the Board the argument that the government violated the ARC Disability Evaluation System procedures, and as a result, plaintiff waived this argument. The court finds no merit to this contention. Plaintiff did assert in his brief before the Board that he was entitled to further Disability Evaluation System processing at the Air National Guard and Board. A28-32. Therefore, plaintiff has preserved this argument. Defendant then contends that even if the court does not find that plaintiff waived this argument, the Disability Evaluation System process afforded to plaintiff was proper.

With respect to the merits of plaintiff's argument, defendant does not deny that the Disability Evaluation System procedures for active duty members differ from those for ARC members or that ARC Disability Evaluation System procedures were not followed. Rather, defendant argues that the process "for shepherding [Air National Guard] members on active duty through the [Disability Evaluation System]" is irrelevant, and only the "substantive criteria for determining an [Air National Guard] member's entitlement to disability benefits under Title 10" is relevant. Def.'s Reply 7 (emphasis removed). Ultimately, the government contends, the procedural error plaintiff complains of, to the extent there was one, did not affect the MEB's substantive finding that plaintiff's sleep apnea did not prevent him from performing a job on active duty, and the result would have been the same had the procedures for ARC members been followed. Consequently, the government argues, plaintiff did not suffer harmful error.

The court agrees with plaintiff that he has demonstrated harmful error. For instance, plaintiff contends that there is no letter from the Physical Evaluation Board Liaison Officer contacting plaintiff's unit to determine his eligibility for Disability Evaluation System processing, AFI 41-210, ¶ 10.11, and there is no letter from his commander, pursuant to AFI 41-210, ¶ 10.6.4, describing the impact of his medical condition on his ability to perform his normal military duties and to deploy or mobilize. Indeed, an important unknown that should have been considered is what the commander's letter would have said, and whether the Air National Guard would have given Mr. Frey an assignment limitation code had there been proper MEB and ARC Disability Evaluation System processing.[3] Further, because the Air National Guard had disqualified plaintiff from any military duty on May 4, 2006, two weeks before the MEB, it is reasonable to assume that plaintiff's commander and the Air National Guard would not have recommended retention with an assignment limitation code and would therefore have stated that plaintiff was unable to perform any military duty. Moreover, the government did not follow the ARC Disability Evaluation System procedures, eliminating several levels of review that could have impacted plaintiff's final evaluation. Had the ARC Disability Evaluation System procedures been followed, the Air Force or the AFPC would have reviewed the MEB results—the MEB recommended Mr. Frey's return to duty and the AFPC was required to review the recommendation. See id. ¶ 10.1.5. Because the Air National Guard disqualified Mr. Frey from

---

[3] AFI 41-210, §10.8.1, states that an assignment limitation code may be assigned to restrict assignment and deployability, with the intent "to protect members from being placed in an environment where they may not receive adequate medical care for a possible life-threatening medical condition and to prevent the assignment of non-qualified personnel to overseas locations."

any military duty, it is quite likely that the Air Force Personnel Center would have reversed the MEB and directed an Informal PEB, id. ¶ 10.1.5.4, but, in any event, because the Board lacked the benefit of this critical information, its decision is not supported by substantial evidence. Consequently, the court finds that ARC Disability Evaluation System processing for plaintiff was not proper, and as a result, the Board's decision did not rest on complete information.

The appropriate remedy in this case is for the court to remand the matter back to the Board with instructions to correct any deficiency in the record and to issue a new decision based upon the corrected record. "The Tucker Act authorizes the court to 'remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.'" Albino v. United States, 93 Fed. Cl. 405, 409 (2010) (quoting 28 U.S.C. § 1491(a)(2)). To the extent that evidence may not have been, or was not, considered below by the board, the "'proper course . . . is to remand to the agency for additional investigation or explanation.'" Walls, 582 F.3d at 1367 (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).[4] The court directs the Board to consider all facts relevant to the flawed processing procedures applied in plaintiff's case.

## V. CONCLUSION

For the reasons set forth above, the court **DENIES** defendant's motion to dismiss and the parties' cross-motions for judgment on the administrative record. The court **REMANDS** the case to the Board for prompt reconsideration of plaintiff's application, with the following instructions:

1. The remand period shall terminate on **Wednesday, February 26, 2014**. The court **STAYS** proceedings in the instant case during that time. If the AFBCMR has not issued a decision by February 26, 2014, the parties shall follow the procedures set forth in RCFC 52.2(d).

2. In its inquiry, the AFBCMR shall consider whether Disability Evaluation System procedures for ARC members were properly followed in plaintiff's case.

3. Pursuant to RCFC 52.2(b)(1)(D), defendant shall file a status report every 90 days, with the first report due **Monday, November 25, 2013**, indicating the status of the proceedings before the AFBCMR.

4. When proceedings before the AFBCMR have concluded, the AFBCMR shall forward four copies of its decision to the clerk of the Court of Federal Claims pursuant to

---

[4] Plaintiff makes additional arguments, including that he should be awarded a 50% disability rating from the Air Force, that he was entitled to a hearing by the National Guard and the Disability Evaluation System, and that he is entitled to medical and dental care until a determination is made on his case. However, as noted above, the appropriate remedy is for the court to remand to the Board.

RCFC 52.2(e).  The parties shall then file, within thirty days of the filing of the AFBCMR's decision, the notices required by RCFC 52.2(f)(1).

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge